**RUCKER et al. v. FIRST NAT. BANK OF MIAMI, OKL.**

No. 2756.

Circuit Court of Appeals, Tenth Circuit.

Oct. 27, 1943.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

Harold E. Rorschach, of Tulsa, Okl. (Jack L. Rorschach, of Vinita, Okl., on the brief), for appellants.

Ray McNaughton, of Miami, Okl. (E. C. Fitzgerald, of Miami, Okl., on the brief), for appellee.

Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Llewellyn B. Duke, Regional Atty., of Dallas, Tex., Morton Liftin and Frederick U. Reel, Attys., United States Department of Labor, both of Washington, D. C., amicus curiae.

MURRAH, Circuit Judge.

Appellants brought this suit against their former employer, The First National Bank of Miami, Oklahoma, to recover unpaid overtime compensation, liquidated damages, and attorney's fee, as provided by the Fair Labor Standards Act of 1938, 52 Stat. 1060–1069, 29 U.S.C.A. §§ 201–219. The trial court held that the employees were not covered by the Act, entered judgment for the employer, and the employees have appealed.

The appellee bank owns and operates a six-story office building in Miami, Oklahoma. With the exception of a small lobby, the entire first floor is used by the appellee for the purpose of engaging in a national banking business. All space above the first floor is leased to various tenants and access to this part of the building is by use of said lobby, where appellee maintains and operates two electric elevators, which are used to convey the tenants and the public to and from the offices located on the upper floors. At various times during 1938, 1939, 1940, and 1941, the appellants were employed as elevator operators to work alternate work weeks of 42 and 46 hours, for which they were paid $5 per week.

The tenants, leasing space from appellee, during the years in question, were engaged in various businesses and professions, but those whose business activities related in any way to interstate commerce were: the executive and administrative offices of a mining and smelting company, engaged in operating lead and zinc mines in Oklahoma, Kansas, and Missouri, from which mines lead and zinc ore moved in interstate commerce; the executive offices of a railroad company, whose trains moved in interstate commerce; the offices of a company engaged in the sale of chat and crushed rock in Oklahoma and other states, small samples of which were occasionally mailed from this office interstate to prospective customers, but the majority of such samples were shipped direct from the company's plant, located elsewhere; an attorney at law, who also owned a certain patented office device which he infrequently shipped interstate to purchasers from a supply retained in his law office, but the majority of such shipments were made from his residence; the office of an abstract company who prepared and delivered abstracts interstate; a sales office for the LaSalle Extension University, the educational courses of which were sold and conducted through interstate communications; the office of a salesman for the DuPont Company, which sold powder and other explosives interstate; a firm of brokers, who sold stocks and bonds throughout the country, and the private office of the bank's inactive president. The space occupied by the foregoing tenants represented approximately 51 per cent. of the occupied space in the building and approximately 40 per cent. of all space. Some of the tenants in the building were depositors of the appellee bank, and they of course, used the elevators while going to and from the banking establishment, located on the first floor, for the purpose of transacting their banking business.

Our problem is to determine whether the appellants, as operators of the elevators in this building, were "engaged in commerce or in the production of goods for commerce," as those phrases are used in Sections 6 and 7 of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206, 207.

There is no fixed formula by which the courts can ascertain with exactitude whether the employee is "engaged in commerce or in the production of goods for commerce," but the decision in

each case must turn upon the attendant facts. However, thus far the judicial process has developed certain fundamental precepts to guide us in the determination of coverage under these phrases. Namely, Congress did not intend to exercise the full scope of its commerce power, but plainly indicated its purpose to leave employment essentially local in character to state control.[1] Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. ——, Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202. Moreover, the phrases "engaged in commerce or in the production of goods for commerce" are not synonymous but supplementary to each other. They were deliberately chosen as appropriate language to delineate entirely different fields of coverage under the act. Furthermore, coverage under either phrase of the act depends upon the character of the employment and not the nature of the employer's business, Kirschbaum Co. v. Walling, supra, Walling, v. Jacksonville Paper Co., supra, and the burden is upon the one asserting coverage to show that the employee is engaged either in commerce or in the production of goods for commerce, without regard to the business of the employer. Warren-Bradshaw Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. ——, and Stoike v. First National Bank, 290 N.Y. 195, 48 N.E.2d 482, certiorari denied 64 S.Ct. 50, 88 L.Ed. ——.

Specifically, we are urged to hold that these employees, as elevator operators, were engaged in the production of goods for commerce on the authority of Kirschbaum Co. v. Walling, supra. In that case the court held that elevator operators and other building employees were engaged in the production of goods for commerce, because the services which they performed were so closely and intimately associated with the actual production of goods for commerce as to be in reality a part of the process. There, concededly, the tenants occupying the building were actually engaged in the production of goods for interstate commerce, and the elevator operators in the building ran both the freight elevators which started and finished the interstate journeys of goods going from and coming to the tenants, and the passenger elevators which carried employees, customers, salesmen and visitors. In holding that elevator operators, under these facts, were engaged in the production of goods for commerce, the court said [316 U.S. 517, 62 S.Ct. 1121, 86 L.Ed. 1638]: "in our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.'" But, the court significantly observed that the criterion was necessarily one of degree and must be so considered in defining coverage under the phrase "production of goods for commerce." See, also, Warren-Bradshaw v. Hall, supra; Walling v. Patton-Tulley Transp. Co., 6 Cir., 134 F.2d 945; Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120, and Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101.

But the facts before us which bear upon the phrase "production of goods for commerce" are only remotely analogous to the facts in the Kirschbaum case. The executive and administrative offices of the mining and smelting company were located in the building serviced by the elevator operators, and this company was doubtless engaged in the production of goods for commerce, but it is not shown on this record whether any of the goods were produced in the building, or that any of the employees transported to and from the offices are directly or indirectly engaged in the production of the goods. The same is true of the chat and crushed rock company, and the abstract company, which produced abstracts, some of which were shipped in interstate commerce. In any event, the relationship is not shown to be "close and immediate." Under these facts it cannot be said that the activities of the elevator operators were an essential part of, or necessary to, the production of goods for commerce.

It is, also, urged that the employees come within the coverage of the phrase "engaged in commerce," chiefly because they are employees of a national bank, which they contend is engaged in com-

[1] Section 13(a) (2), 29 U.S.C.A. § 213 (a) (2) provides: "The provisions of sections 206 and 207 * * * shall not apply with respect to * * * any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *."

merce, and for the reason that certain tenants, serviced by the elevators they operate, are "engaged in commerce."

As an appropriate criterion for the interpretation of the phrase "engaged in commerce", used in the Fair Labor Standards Act to measure coverage, the courts have adopted the judicial construction of the similar phrase "employed * * * in such commerce" used to measure coverage under the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51.[2] See Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. ——; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Walling v. Patton-Tulley Transp. Co., supra, and Consolidated Timber Co. v. Womack, supra.

In Overstreet v. North Shore Corp., supra, the Supreme Court in measuring coverage under the phrase "engaged in commerce," embraced what it deemed the "practical test," announced in Pedersen v. Delaware, Lack. & West. R. R., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas. 1914C, 153, and Philadelphia, B. & W. R. R. Co. v. Smith, 250 U.S. 101, 39 S.Ct. 396, 63 L.Ed. 869, construing the phrase "employed * * * in such commerce," as contained in the Federal Employers' Liability Act. Those cases announced the rule that an employee was deemed to be "employed * * * in such commerce" when the employment was so closely and intimately related to interstate commerce as to be in practice and legal contemplation a part of it. Applying this "practical test" to the phrase "engaged in commerce" the court held in the Overstreet case that the seller of tickets on a toll bridge, over which interstate traffic moved, and the operator of the draw bridge, which was raised to permit passage of interstate water traffic, as well as the maintenance and repair man on the said bridge, were "engaged in commerce," within the meaning and scope of the Fair Labor Standards Act. See, also, Pedersen v. J. Fitzgerald Const. Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. ——.[3]

In Overnight Motor v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, the Supreme Court had no difficulty in holding that a rate clerk, employed in the office of an interstate motor carrier, was a transportation worker engaged in interstate commerce within the meaning of the act, and in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. ——, the court held that it was the purpose of the act to extend federal control under the phrase engaged in commerce "throughout the fartherest reaches of the channels of interstate commerce," and that if a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established, the employment was covered by the act. But, in the more recent case of McLeod v. Threlkeld, 319 U.S. 491, 63 S. Ct. 1248, 1253, 87 L.Ed. 1538, the Supreme Court adopted and applied a somewhat different notion of the phrase "engaged in commerce."[4] In that case it was held that the phrase included every employee in the "channels of interstate commerce," but limited coverage to activities actually in or so closely related to the "movement of the commerce" as to be practically a part of it. This concept of commerce is likewise bottomed upon decisions of the Supreme Court construing the phrase "employed * * * in such commerce" in the Federal Employers' Liability Act. Shanks v. Delaware, L. & W. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436, L.R.A.1916C, 797; Chicago & North Western Railway Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 76 L.Ed. 173; Chicago & Eastern Illinois Railroad Company v. Industrial Commission, 284 U. S. 296, 52 S.Ct. 151, 76 L.Ed. 304, 77 A. L.R. 1367, and New York, New Haven & Hartford Railroad Co. v. Bezue, 284 U.S. 415, 52 S.Ct. 205, 76 L.Ed. 370, 77 A.L.R. 1370.

---

[2] Prior to the amendment of August 11, 1939, 53 Stat. 1404, 45 U.S.C.A. § 51, the Federal Employers' Liability Act provided: "Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *."

[3] The Supreme Court, on authority of Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. ——, reversed the Court of Appeals of New York, which had affirmed the New York Supreme Court, Appellate Division, 262 App.Div. 665, 30 N.Y.S.2d 989; Id., 288 N.Y. 687, 43 N.E.2d 83.

[4] See the dissenting opinion by Mr. Justice Murphy, who also wrote the opinion in Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. ——.

The Shanks case, supra [239 U.S. 556, 36 S.Ct. 189, 60 L.Ed. 436, L.R.A.1916C, 797], laid down the rule that to be employed "in such commerce" an employee must be "engaged in interstate transportation [not interstate commerce] or in work so closely related to it, as to be practically a part of it." See, also, Chicago, Burlington & Quincy Railroad Co. v. Harrington, 241 U.S. 177, 36 S.Ct. 517, 60 L.Ed. 941. The subsequent cases, which followed this rule in determining coverage under the Federal Employers' Liability Act expressly recognized the difference in the meaning of the words "transportation" and "commerce," when used to measure coverage, and accordingly held that the word "transportation" had been deliberately chosen by the court in the Shanks case as the appropriate term for the determination of coverage under the act. These cases also expressly repudiate the broader concept of commerce earlier announced in Pedersen v. Delaware, L. & W. R. Co., supra, without reference to Philadelphia, B. & W. R. R. Co. v. Smith, supra. See Chicago & North Western Railway Co. v. Bolle, supra; Chicago & Eastern Illinois Railroad Co. v. Industrial Commission, supra, and New York, New Haven & Hartford Railroad Co. v. Bezue, supra. But the court did not go so far in McLeod v. Threlkeld, supra. It refrained from repudiating the result reached in Pedersen v. Delaware, L. & W. R. Co., supra; it did, however, expressly reject the holding in Philadelphia, B. & W. R. R. Co. v. Smith, supra, as an appropriate criterion for its decision, although the facts in the two cases are indistinguishable.[5]

■ Whatever may have been the doubts and differences along the way, it now seems fairly plain that the phrase "engaged in commerce," when used to measure coverage under the Fair Labor Standards Act, encompasses only employment actually in the "movement of commerce," or activities so closely related thereto as to be practically a part of it. In other words, "engaged in commerce" means engaged in the interstate transportation or movement of commerce.

■ When coverage is measured by this test the inapplicability of the act to the employment here becomes manifestly plain. Conceding for the purposes of this case only, that at least a part of the activities of the bank constitute "movement of commerce" interstate,[6] it is not shown on this record what relationship, if any, these employees bear to the activities constituting the "movement of commerce." Certainly they are not brought within the scope of the act by the showing that they transport the inactive president to and from his office, or other bank officers to and from his office on official business; or that the employees transported customers from their offices in the building to the banking establishment on the first floor. Cf. Stoike v. First National Bank, supra, Rosenberg v. Semeria, 9 Cir., 137 F.2d 742, certiorari denied 64 S.Ct. 82, 88 L.Ed. ——; Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287; Lofther v. First National Bank of Chicago, 7 Cir., 138 F.2d 299. The railroad company maintained executive offices in the building, and it was unquestionably engaged in the "movement of commerce," but it is not shown whether the employees who worked in that office, and who were transported by the elevator operators, were in any sense engaged in the "movement of commerce." The lawyer shipped some goods in interstate commerce from his office in the building; the extension university conducted its courses in interstate commerce; the powder company sold explosives interstate; the broker sold stocks and bonds interstate, but the bare fact that these elevator operators conveyed persons or employees of business concerns thus engaged in commerce to and from their offices does not bring their activities so close to the "movement of commerce" as to be in reality a part of it.

---

[5] Both the McLeod and Smith cases involved coverage of cooks, who were employed to provide food and lodging for workmen engaged in the repair of railroad bridges used in interstate traffic. In each case the cook worked in a railroad camp car, situated on railroad tracks at or near where the workmen were engaged in the repair of the bridges. Four of the justices who dissented in the McLeod case thought the Smith case was the proper test for coverage in the McLeod case.

[6] Lorenzetti v. Amer. Trust Co., D.C., 45 F.Supp. 128, and Stoike v. First National Bank of New York, 290 N.Y. 195, 48 N.E.2d 482.

We conclude that the employees were neither engaged in commerce or in the production of goods in commerce and are, therefore, not within the coverage of the Fair Labor Standards Act.

The judgment is affirmed.