## BORELLA et al. v. BORDEN CO.

### No. 398.

Circuit Court of Appeals, Second Circuit.

July 28, 1944.

Writ of Certiorari Granted Jan. 2, 1945.

See 65 S.Ct. 431.

A. H. Frisch, of New York City, for appellants.

John A. Kelly, of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment, dismissing the complaint in an action brought by employees of the defendant to recover for overtime denied them, which they assert to have been due under § 7(a) of the Fair Labor Standards Act, § 207(a), Title 29 U.S.C.A. The facts, which are not in dispute, are sufficiently stated in the findings of the trial judge. The upshot of them is as follows. The defendant is a New Jersey corporation engaged in the milk business, which includes "processing, manufacturing, selling and distributing" milk as such, and making condensed and evaporated milk, "casein, ice cream, butter, cheese and various other products." It has an enormous business, and sends its products throughout the United States, and to foreign countries. The manufacturing all takes place in factories in the United States and Canada, which it owns and operates; but its executive and administrative activities—the supervision, management and control of the entire business—are all centered in an office building in New York, which it owns, and of which it occupies fifty-eight per cent of the total rentable area. It is not necessary to state in detail the various activities which take place

in this building; it is enough to say that here the directors meet; here the president, vice-president, treasurer, assistant treasurer, secretary, assistant secretary, and other corporate officers are housed; here is carried all its accounting; here are its cashier and his assistants; here much of the advertising is devised (though none of it is printed); here its labels are designed; here some of its photostating takes place. This is the spot from which all directions go out as to what shall be bought, what shall be manufactured, where the products shall be distributed, etc. However, no milk is processed here, nor sold from here; nor any casein, butter, cheese or other products. That part of the building which the defendant does not occupy, it leases to others who do not "produce, manufacture, handle, process or in any other manner work on any goods."

The plaintiffs are the service and maintenance employees for the whole of this building: (1) Porters, who keep the corridors, stairways and lavatories of the building clean, who move the furniture, pack the waste paper, distribute the towels, etc.; (2) elevator operators; (3) night watchmen, who protect the building by making their rounds and punching their clocks. Although the plaintiffs somewhat faintly assert that they are "engaged in interstate commerce," that is plainly a subsidiary point, their main reliance being that they are "engaged in the production of goods for commerce," within the meaning of § 7(a) of the Act.

■ Since the decision of the Supreme Court in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, the plaintiffs do well to rely upon the second point, for it is clear that they are not "engaged in commerce." The New York Court of Appeals had already so ruled in an analogous situation (Stoike v. First National Bank, 290 N.Y. 195, 48 N.E.2d 482), and the Seventh Circuit did the same later. Lofther v. First National Bank, 138 F.2d 299. We may therefore confine our discussion to whether they are "engaged * * * in the production of goods for commerce." It has been several times held, when all the activities of manufacture and sale take place in one building: i. e., the actual handling of the materials and of the finished products, and the administrative direction of the business, that employees in the plaintiffs' position are within the statute. Fleming v. Atlantic Co., D.C., 40 F.Supp. 654,

affirmed (though without discussion of the point) Walling v. Atlantic Co., 5 Cir., 131 F.2d 518; Fleming v. Swift & Co., D.C.Ill., 41 F.Supp. 825, 830, affirmed (though without discussion of this point) Walling v. Swift & Co., 7 Cir., 131 F.2d 249; Holland v. Amoskeag Machinery Co., D.C.N.H., 44 F.Supp. 884. But such decisions are inconclusive, because after A. B. Kirschbaum Co. v. Walling, Administrator, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, it would be enough if the quarters occupied by those actually in contact with the materials or the finished goods, were greater in area than those occupied by the administrative officials, as they generally are. It is only when the two groups are separated into different buildings, each cared for by a separate body of employees, that the question before us is tested; although, when that is the situation, it will obviously make no difference whether the separate building is on the same plot as the factory, or across the street, or, as here, in a different city.

■ The case may, therefore, be further narrowed to whether the administrative agents and employees of a producing company are themselves "engaged * * * in the production of goods for commerce." Since these are words of colloquial speech, having "fringes" of connotation, and unlike the terminology of science, deliberately fabricated for its definite outlines, it is to be expected that interpretation will vary. Nor do we necessarily arrive at the right meaning by a process of step by step examples; as though we should say that, if those who handle the milk are "engaged in production," so must be the foremen who direct them and occasionally lend a hand; and if the foremen, so must be the division superintendents, and so on. While that approach is not illegitimate, it can easily lead one astray, for the reason we have just given: that legislators, like others concerned with ordinary affairs, do not deal in rigid symbols, so far as possible stripped of suggestion, and do not expect their words to be made the starting point for a dialectical progression. We can best reach the meaning here, as always, by recourse to the underlying purpose, and, with that as a guide, by trying to project upon the specific occasion how we think persons, actuated by such a purpose, would have dealt with it, if it had been presented to them at the time. To say that that is a hazardous process is indeed a truism, but we cannot escape it, once we abandon

literal interpretation—a method far more unreliable. In the case at bar we start with the datum that employees like the plaintiffs are "engaged in production" when they care for the quarters of those who manufacture the goods, or handle them. A. B. Kirschbaum Co. v. Walling, Administrator, supra, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. That is because those who make or handle them are so engaged, and because the caretakers' work is "necessary" to their activities (§ 203(j), Title 29 U.S.C.A.). We are to ask ourselves whether the purpose which included caretakers in that situation, included caretakers in this. Indeed, in one respect the plaintiffs are nearer to "production" than were the employees in A. B. Kirschbaum Co. v. Walling, Administrator, supra, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; for they were employed directly by the manufacturer, instead of by the manufacturer's lessor. On the other hand they are further from "production," if production must be confined to actual contact with the raw material, or the finished goods. The Tenth Circuit thought that that further remove was enough to take them outside the statute. Rucker v. First National Bank of Miami, Okl., 138 F.2d 699, 702 (2nd Col.). But it seems to us that the circumstance that administrative officials do not come in physical contact with the goods at any stage of their production, could not have been thought relevant to the object to be attained. We can conjure up no reason that could have induced Congress, having included employees who made tenantable the quarters of artisans and shipping clerks, to exclude those who made tenantable the quarters of the president, the managers, the cashiers, superintendents and the rest.

We do not indeed mean that here, or in any other interpretation of language, the words used are not far and away the most reliable source for learning the purpose of a document; the notion that the "policy of a statute" does not inhere as much in its limitations as in its affirmations, is untenable. But we are not faced with that difficulty, for there are no words of limitation. The definition of "produced" in § 3(j) concludes with the clause: "process or occupation necessary to the production thereof." True, the Supreme Court in A. B. Kirschbaum Co. v. Walling, Administrator, supra, 316 U.S. 517, 525, 62 S.Ct. 1116, 86 L.Ed. 1638, cautioned us

against pressing too literally the word "necessary," but that caution need not disturb us here. Those who direct the whole conduct of an industry—both manufacture and distribution—are "necessary" to "production," if anyone is "necessary." As was observed over a century ago, every process of manufacture (indeed for that matter every process by which men can affect the outside world at all) may be resolved into the movement of things in space, and it would be absurd to say that, although what the artisans do in the factory, or the dispatching clerks do upon the shipping platforms, is "necessary" to "production," the directions they receive that govern all the movements they impart, are not "necessary." We can therefore see nothing in the language used which should limit the general purpose that, as we have tried to show, comprehends the plaintiffs; and it appears to us that any hesitation to give that purpose its full scope must proceed from a vague compunction that to press the statute so far, is unduly to invade fields which Congress must have meant to leave to local regulation. We do not share that compunction. It is of course true that the whole statute invades fields which were formerly left to local regulation. That Congress did not mean to exercise its power to the full is not important; rather the question is whether we shall say that the borders of those fields which it did choose to occupy, are to be found by considering its object, or whether the realization of that object shall be truncated by irrelevant considerations.

Judgment reversed; judgment directed for the plaintiffs.

SWAN, Circuit Judge (dissenting).

I think the judgment should be affirmed. Section 3 of the Act, 29 U.S.C.A. § 203(j), provides that "for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof." In my opinion the porters, elevator operators, and night watchmen of the defendant's office building are too remotely related to "the production" of goods for commerce to be within the coverage of the Act. Rucker v. First Nat. Bank of Miami, Okl., 10 Cir., 138 F.2d 699, 702.