**DIVINS et al. v. HAZELTINE ELECTRON-ICS CORPORATION et al.**

District Court, S. D. New York.

Aug. 7, 1946.

Joseph G. Telchin, of New York City, for plaintiffs.

Cahill, Gordon, Zachry & Reindel, of New York City (Mathias F. Correa and William L. Dennis, both of New York City, of counsel), for defendants.

CAFFEY, District Judge.

This is an action under Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b), to recover for overtime work in excess of forty hours per week, together with an additional equal amount as liquidated damages and reasonable attorney's fees.

Defendants have not answered but are moving on the complaint and supporting affidavits, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. ·following section 723c, for summary judgment dismissing the complaint, on the ground that there is no genuine issue as to any material fact and that they are entitled to such a judgment as matter of law, plaintiffs not being within the coverage of the Act.

Defendants manufacture radio, radar, electronic and other equipment, the raw materials for which are shipped in large part to their plants in New York State from points outside the State. Substantially all the completed products are also shipped outside the State.

The United States Navy Department had entered into service contracts with defendants to recruit and train "field engineers" and to supply specified amounts of man months of technical professional services of such engineers, to be subject to the direction of the Department and to be used by the Department in connection with radar equipment which was owned by the United States and had been delivered into its physical possession and was located at various naval establishments. Some of this equipment had been manufactured by defendants but most by other manufacturers.

After some weeks of training for which they were paid by defendants, plaintiffs were sent out, pursuant to the said contracts, Divins to South Carolina, North Carolina, Georgia and Florida and Martoccia to Washington and Oregon. Plaintiffs say in their opposing affidavits that, although nominally the title of their positions was that of a "field service engineer," "my work was simply that of a radio service or repairman;" that approximately 50% of all their work was "to grease and

oil moving parts of the equipment;" that, with the exception of making certain periodic written reports to defendants, "almost all of my remaining work was actually radio servicing;" that "almost all of my work was actually done on ships or in radar work shops at shipyards or naval bases;" and that "I installed, serviced and maintained radar and other equipment" on numerous types of war ships, many of which were new and in the process of construction and others of which were old, having seen active service and been returned for repairing and refitting, including the installation of newer types of radar equipment. Some of these ships were owned by the United States, some by different allied nations, and some were turned over by the United States to allied nations for operation under lend-lease.

Plaintiffs repeatedly describe their work as "installing, servicing and maintaining radar equipment," whether manufactured by defendants or by others. They allege in their complaint that in performing their duties they were engaged in interstate commerce and also in the production of goods in interstate commerce.

Whether plaintiffs were covered by the Act depends upon the nature of their services and not upon the nature of their employer's business or the project in connection with which their services were rendered. See Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90, 63 S.Ct. 125, 87 L.Ed. 83; Overstreet v. North Shore Corp., 318 U.S. 125, 132, 63 S.Ct. 494, 87 L. Ed. 656.

The controversy here centers principally around the question whether plaintiffs were engaged in the production of goods for interstate commerce. And this turns upon whether the radar equipment, the goods, upon which plaintiffs worked had been delivered to and was at the time in the actual physical possession of the ultimate consumer thereof. There is no claim that the actual physical possessor was a producer, or a manufacturer, or a processor of the equipment.

Defendants allege in their moving affidavits that the radar equipment had been delivered to the United States prior to the times, and was in the actual physical possession of the United States at the times, that plaintiffs' services were utilized in connection therewith. Plaintiffs do not deny these allegations but describe them as bare conclusions and insufficient upon this motion to show such delivery and possession. However, in their answering affidavits they admit that they were employed by defendants to perform, and did perform, services in installing, servicing and maintaining radar equipment under contracts which defendants had with the United States, or with others who had made similar contracts with the United States, to render such services, and that their services were rendered at various United States naval establishments and upon various types of warships owned by the United States. I think that delivery and possession are sufficiently shown. If the facts be otherwise, plaintiffs should have made some attempt to show it.

But, instead of doing so, they rely upon the arguments that the radar equipment had not been fully completed at the time of its claimed delivery to the United States, for, if it had been completed, there would have been no necessity for plaintiffs to work upon it; that the equipment was useless and incapable of use unless and until it was installed and serviced by plaintiffs; that, so long as defendants' employees were working on the equipment, defendants still had the actual physical possession of it and there could be no delivery; and that the ships in which the equipment was being installed had not themselves been completed.

All these arguments are specious. There is no requirement in Section 3(i) of the act, 29 U.S.C.A. § 203(i), that the goods shall have been completed prior to delivery. This Section defines goods as including "marine equipment, * * * or articles or subjects of commerce of any character, or any part or ingredient thereof." Though the equipment may have been incapable of use until installed, it was, nevertheless, marine equipment. Many articles, such as gas stoves, electric refrigerators, etc., are completed articles but incapable of use until installed and connected. Plaintiffs do not claim that the radar equipment was not completed before it was shipped from the

plant; all that they claim is that it first had to be installed. The work of installing this equipment must have been a very small part of plaintiffs' services, for in their answering affidavits they swear that "approximately 50% of all my work was to grease and oil moving parts of the equipment * * * and almost all of my remaining work was actually radio servicing." The argument that, so long as plaintiffs were working on the equipment, defendants still had actual physical possession of it, is a non sequitur. Whether the ships had themselves been completed is of no consequence in this connection.

Plaintiffs argue also that the United States was not the ultimate consumer because, to quote from their briefs, (a) "To enable one to be an 'ultimate consumer', the goods, when delivered, must be capable of immediate use in their then condition and state of completion. If the goods were not fully completed, obviously, they could not be consumed;" (b) "logically and obviously, no one can be a consumer of goods that are incapable of being consumed. Until the goods were completed, they could not be consumed under any circumstances;" (c) "The United States Government did not consume the ships. It used them in interstate commerce, i. e., to transport troops, ammunitions, food, water and other supplies;" and (d) "An 'ultimate consumer' is one who withdraws goods from commerce for the purpose of use. Since the very purpose of the Government's obtaining the goods herein * * * was for the purpose of using such goods in interstate commerce, the Government, obviously, could not be and was not an 'ultimate consumer.'"

All these arguments are also specious. The concept underlying (a), (b) and (c), that one who does not consume the goods cannot be an ultimate consumer, is fallacious. Durable goods, such as steel boilers, copper wire, radar equipment, etc., are not consumed by use, while non-durable goods, such as clothing, food, small tools, etc., are. Yet one may be the ultimate consumer of both. Likewise, one may be the ultimate consumer of goods not fully completed, unless he is a producer, manufacturer, or processor thereof. The term "ultimate consumer" cannot be limited in its application

to goods which are fully completed, or which are permanently installed, or which are consumed, i. e. disappear as the result of their use. It must be construed as also including the one who uses such goods, whether or not fully completed, permanently installed, or consumable. Nor is the character of the use determinative. The goods may be withdrawn from commerce, or they may be used in commerce; in either case, unless the user is a producer, manufacturer, or processor of the goods, he is an ultimate consumer of them.

The recent case of Lynch v. Embry-Riddle Co., D.C., S.D.Fla., 63 F.Supp. 992, decided by Judge Holland, is analogous to the case at bar. There defendant operated machine shops in which aircraft engines and parts, such as carburetors and propellers, and airplane wings, fuselages and tail assemblies were overhauled and repaired. The Government delivered to it for repair aircraft-engines and airplanes which had been used. Plaintiffs were employed by defendant in such repair work. The court held that, as these engines and airplanes had previously been delivered to and were in the possession of the Government, it was the ultimate consumer and that plaintiffs were not engaged in the production of goods for commerce.

Plaintiffs' claim that they were engaged in the production of goods for commerce because they were obliged to, and did, prepare and mail periodically to defendants in this State service reports, installation reports and weekly time reports, does not bring them within the coverage of the Act. The making of such reports was purely incidental to their services in installing, maintaining and repairing the radar equipment. Such incidental services did not bring them within the coverage of the Act, if their principal services did not. They were not employed to make such reports, as a time-keeper or stenographer might have been.

I have no doubt that the radar equipment had been delivered to, and was in the actual physical possession of the United States. Nor have I any doubt that the United States was the ultimate consumer thereof.

Plaintiffs also claim that they were engaged in commerce, as distinguished from being engaged in the production of goods for commerce, because the ships in which the radar equipment was installed, were "used in the conduct of the war and were thus engaged in interstate commerce," and, "whether in peacetime or in wartime, ships are vital instrumentalities of commerce." I do not think that this argument is sound. Prosecution of a war is not commerce. War is the negation of commerce. Often the purpose of a war and the result, usually, is to impair or destroy commerce, not to carry it on. True, in the prosecution of the war warships transport men, munitions, food for crew and troops and supplies for civilians. Literally speaking, this is commerce but it is purely incidental to the main purpose for which the warships are being used.

I think that this is so, even though, as pointed out in Ritch v. Puget Sound Bridge & Dredging Co., Inc., 9 Cir.1946, 156 F.2d 334, Congress has authorized the use of naval combat vessels in many non-combat functions in maritime commerce. In that case plaintiffs were employers of private dredging contractors engaged in dredging two channels from the navigable waters of Puget Sound, deepening such channels toward the Bremerton Navy Yard and building retaining walls on the lower side of a pier which extended from the navigable waters to the Navy Yard shore, the channels and the berths of the pier to be used by combat vessels moving in the navigable waters of the Sound into and resting in and moving out of the berths. The court held that, as the combat vessels had been authorized to engage, and were engaged, in commerce for the use of private persons, the contractors were engaging in commerce and plaintiffs were covered by the Act.

In McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538, the court said:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase 'production of goods for commerce.'"

And in Rucker v. First National Bank of Miami, 10 Cir., 138 F.2d 699, 704, the court said:

"Whatever may have been the doubts and differences along the way, it now seems fairly plain that the phrase 'engaged in commerce,' when used to measure coverage under the Fair Labor Standards Act, encompasses only employment actually in the 'movement of commerce,' or activities so closely related thereto as to be practically a part of it. In other words, 'engaged in commerce' means engaged in the interstate transportation or movement of commerce."

I do not think that greasing and oiling moving parts of the radar equipment and radio servicing, which plaintiffs say constituted their activities, were activities actually in or so closely related to the movement of commerce as to be a part of it, especially when such services were rendered before the vessels were completed, or repaired, and put to sea and became engaged in the movement of commerce. It was so held in the Lynch case, supra, 63 F.Supp. at page 996. In fact plaintiffs' counsel did not there contend otherwise.

In my opinion plaintiffs are not within the coverage of the Act because they were not engaged in commerce and, so far as they were engaged in the production of goods for commerce, the goods upon which they worked were in the actual physical possession of the ultimate consumer which was not a producer, manufacturer, or processor thereof.

The motion for summary judgment should be granted. Settle order on two days' notice.