**James P. MITCHELL, Secretary of Labor**

v.

**DOOLEY BROS., INC.**

**Civ. A. No. 59–653.**

United States District Court
D. Massachusetts.

Feb. 26, 1960.

Harold C. Nystrom, Washington, D. C., Thomas L. Thistle, Boston, Mass., for plaintiff.

Joseph Fisher, Maurice Caro, Boston, Mass., for defendant.

WYZANSKI, District Judge.

The case is before this Court on defendant's motion for summary judgment. For present purposes this Court assumes the accuracy of every fact set forth in the stipulations of the parties and in plaintiff's affidavit. And the question presented is whether if the facts are as the Secretary of Labor alleges he is correct in his contention that employees of a rubbish disposal firm having business entirely in Massachusetts but removing rubbish from buildings occupied by firms engaged in interstate commerce as well as from other buildings are brought within the coverage of the Fair Labor Standards Act by § 3(j), 52 Stat. 1060, as limited by the amendment of October 26, 1949, 63 Stat. 910, 911, 29 U.S.C.A. § 203(j).

Defendant is a Massachusetts corporation. Its sole business is in Boston and nearby Massachusetts communities. That business is the collection and disposal of rubbish, debris, and industrial waste. It serves governmental agencies all of which are engaged in interstate commerce, business organizations many

of which are engaged in commerce or in the production of goods for commerce, local retail establishments whose employees are not covered by the Act, and private homes. "Ordinarily the waste is placed by those to be accommodated near, but not necessarily on, the sidewalk or street abutting their property. In some instances waste, etc. was collected from inside elevators and loading platforms of the industrial customers." Removal of the rubbish from the places of business served by defendant "is essential because it would interfere with * * * production, impede * * * efficiency and * * * be a hazard to health safety regulations."

Each of six of defendant's employees spend one fourth to one third of every working day in collecting rubbish from customers who are engaged in interstate commerce. Defendant has not kept an accurate record of hours worked by these employees. It has employed them regularly in excess of 40 hours a week, and has not paid them time and one-half for hours worked in excess of 40 hours a week.

On the basis of those facts plaintiff seeks an injunction pursuant to § 17 of the Act, 29 U.S.C.A. § 217, to restrain defendant from violating § 15(a) (2) and (5) of the Act, 29 U.S.C.A. § 215(a) (2) and (5).

Before the 1949 amendment to the Fair Labor Standards Act the six employees probably would have been covered by the statute. At that time § 3(j) of the Act covered employees engaged "in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof." That text served to cover porters who cleaned a building occupied by tenants principally in the production of goods for interstate commerce (Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638), maintenance employees in an office building 58% of which was rented for administrative offices of tenants engaged in production of goods for interstate commerce (Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865), employees of an independent local electrical contractor serving 1000 firms, 33 of which were engaged in interstate commerce (Roland Elec. Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383), and employees of a corporation engaged in washing windows within the state of its incorporation under contracts with its customers, most of the work being done on premises used by its customers in the production of goods for interstate commerce (Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603).

But in the Act of October 26, 1949, 63 Stat. 910, 911, Congress restricted § 3(j) so that "for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was engaged in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any *closely related* process or occupation *directly essential* to the production thereof, in any State." (Emphasis added to show the change from the 1938 statute).

The history of this amendment is of cardinal significance. As is shown in 95 Cong.Rec. 11001, Congressman Lucas, the sponsor of the bill from which the 1949 statute developed, sought to "reverse the Supreme Court's ruling that the act applies to a local window-cleaning company doing business within the State but some of whose customers are engaged in interstate commerce or in the production of goods for interstate commerce, Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603, rehearing denied 327 U.S. 816, 66 S.Ct. 699, 90 L.Ed. 1039". He also sought to make it clear that the Administration could not "hold the act applicable as he has in the past to the following:

"(a) employees of a local independent nursery concern whose duties include mowing the lawn around the plant of a customer within the state engaged in

producing goods for interstate commerce * * *.

"(c) employees of a local exterminator service firm, who work wholly within the State exterminating pests in private houses * * * and also in buildings within the State used to produce goods for interstate commerce." 95 Cong.Rec. 11001.

With these objects, Congressman Luca's bill inserted in the 1938 version of § 3(j) the words "closely related" before the words "process or occupation" and substituted the word "indispensable" for the word "necessary".

■ Congressman Lucas's first suggestion did prevail, but his second suggestion was altered. Instead of the word "indispensable" or "necessary" the amendment as carried uses the two words "directly essential". The statements in 95 Cong.Rec. 14874, 14880, 14928, 14935, 14937, 14942, explaining the conference agreement, demonstrate that the words "directly essential" together with the words "closely related" were intended to overrule the Martino case and comparable rulings by the Wage and Hour Administrator. The final report on the amendment made it clear that the Act still covered "employees repairing, maintaining, improving or enlarging the building, equipment, or facilities of producers of goods" and "plant guards, watchmen, and other employees performing protective or custodial services for producer[s] of goods". But it is equally clear that Congress inserted the new phrases in order to exclude from the coverage of the Act some employees of local service companies who had previously come within the Act's coverage.

■ Just what types of local employees were excluded by the 1949 amendment is doubtful. The Department of Labor Interpretative Bulletin Part 776 Subpart A on the General Coverage of the Wage and Hours Provisions of the Fair Labor Standards Act of 1938 (Revised), Sections 776.0–776.21 struggles to find some meaningful tests. Insofar as the bulletin repeats illustrations from the Congressional history it is clear. See, for example, Section 776.19(b) (5). Aside from those illustrations, the bulletin lists so many and such indefinite criteria that they are suggestive rather than definite. Moreover, the bulletin reveals a grudging attitude toward the disclosed policy and obvious purpose of the 1949 amendment, and a more than hospitable attitude toward the pre-1949 cases interpreting the basic 1938 statute. This appears, for example, in Section 776.19(a) (3). In short, the bulletin seems to me an unsafe guide because it has overlooked Judge Learned Hand's reminder that "the notion that the 'policy of a statute' does not inhere as much in its limitations as in its affirmation, is untenable." Borella v. Borden Co., 2 Cir., 145 F.2d 63, 64, 65. Particularly when a limitation is introduced into a statute by amendment, adopted because of expressed Congressional dissatisfaction with earlier judicial and administrative rulings, both the administrative agency and the courts ought to give the limitation a generous reading. Congress in effect has said that the earlier rulings have tended to go too far and a counter-trend is desirable.

■ With the 1949 Congressional policy in mind, I regard these as being the dominant factors in the present case. None of defendant's employees is, nor is the defendant itself, engaged in interstate commerce or in the production of goods for commerce. Both the employer and all its employees are in an independent local service industry. Defendant's customers include local businesses and private homes as well as enterprises engaged in commerce and in production. The service defendant renders is not connected with the delivery of energy, or of parts, or of supplies. It is a type of service rarely, at least in urban communities, undertaken by an enterprise engaged in commerce or in production. Indeed it is often performed by public employees of local government. A layman, until he heard a lawyer's argument, would never think of the rubbish collector as in an occupation related to pro-

ducing goods. And even after argument, this Court cannot see that the occupation of rubbish collector for an independent local service company is, in the words of the 1949 statute, "closely related".

Moreover, a comparison of this case with the examples cited in the Congressional history persuades me that this is just the sort of situation which Congress wanted excluded from the Fair Labor Standards Act. Collectors employed by local rubbish companies are more like employees of a local window washing company or employees of a local exterminator company than they are like repairmen, maintenance men, custodians, or guards. Since the amendment excludes from the Act an employee of a local company removing dirt from windows, it excludes from the Act an employee of a local company removing trash from barrels.

Motion granted.