James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff, Appellant,

v.

DOOLEY BROS., INC., Defendant, Appellee.

Herbert KLETJIAN, d/b/a University Cleaning Co., Defendant, Appellant

v.

James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff, Appellee.

Nos. 5670, 5686.

United States Court of Appeals First Circuit.

Dec. 19, 1960.

No. 5670:

Bessie Margolin, Asst. Sol., Washington, D. C., with whom Harold C. Nystrom, Acting Sol. of Labor, Washington, D. C., Thomas L. Thistle, Regional Atty., Boston, Mass., and Beate Bloch, Washington, D. C., Attorney, on brief, for appellant.

Joseph Fisher, Boston, Mass., with whom Maurice Caro, Boston, Mass., on brief, for appellee.

No. 5686:

George A. McLaughlin, Walter H. McLaughlin and Charles S. McLaughlin, Boston, Mass., on brief, for appellant.

Judah Best, Attorney, Washington, D. C., with whom Harold C. Nystrom, Acting Sol. of Labor, Bessie Margolin, Asst. Solicitor, Jacob I. Karro, Attorney, Washington, D. C., and Thomas L. Thistle, Regional Attorney, Boston, Mass., on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

These two cases brought by the Secretary of Labor under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, involve identical issues and similar facts and should have been heard together. Before we realized this we permitted the Secretary to argue the one later filed first, and the other the following month. We treat them in one opinion. It was agreed that the defendants in both cases failed to meet the act's requirements for overtime. 29 U.S.C.A. § 207. The only issue is whether the employee or employees in question were "engaged in the production of goods for commerce" as that phrase is defined by section 3(j), discussed more fully below.[1] Each case was decided on a motion for summary judgment. In Kletjian, the one first argued, the court granted plaintiff Secretary's motion. In Dooley Bros., the defendant's was granted. In each case there is an appeal from the adverse judgment.

The facts in the Kletjian case were not controverted. Kletjian is an independent contractor providing cleaning services to businesses engaged in commerce or in the production of goods for commerce. From August 1957 to April 1959 he employed one Didris, who did general janitorial work for customers contracting for Kletjian's services such as sweeping up, emptying wastebaskets, washing and waxing floors, washing windows and cleaning restrooms.

In Dooley Bros. we must first consider a procedural matter to determine what facts are before us. The defendant accompanied its motion for summary judgment with an affidavit, and the plaintiff filed the affidavit of an investigator in opposition. Included in plaintiff's counteraffidavit were purported copies of letters from some of defendant's admitted customers. In Jefferson Construction Co. v. United States, 1 Cir., 1960, 283 F.2d 265, 267, we noted that in order to comply with Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S. C., affidavits on motions for summary judgment must be on personal knowledge, and held that a statement based on "undisclosed conversations with unnamed employees" clearly was not. Logically, a copy of a letter, even verbatim and

---

1. Section 207 also covers employees "engaged in commerce." 29 U.S.C.A. § 207 (a). Whether there is any difference involved in the application of this alternative phrase, defined in Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196, has been a source of difficulty. Compare Johnson v. Dallas Downtown Development Co., 5 Cir., 1942, 132 F.2d 287, 289, certiorari denied 318 U.S. 790, 63 S.Ct. 994, 87 L.Ed. 1156, and Stoike v. First National Bank of City of New York, 1943, 290 N.Y. 195, 201–204, certiorari denied 320 U.S. 762, 64 S.Ct. 50, 88 L.Ed. 455, with H. B. Zachry Co. v. Mitchell, 5 Cir., 1959, 262 F.2d 546, 551–552, affirmed 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753, and Mitchell v. S. A. Healy Co., D.C.N.D.Ill.1959, 190 F.Supp. 897, reversed on other grounds 7 Cir., 1960, 284 F.2d 37. The cases were argued here, and apparently below, without reference to this second basis of coverage, and we do not feel compelled to explore it.

signed, is still unauthenticated and hearsay. However, the court below stated in its opinion that it "assumes the accuracy of every fact * * * in plaintiff's affidavit." [181 F.Supp. 312.] In Jefferson we raised, but did not answer, the question of how far under Rule 56(d) and 56(f) a court might go beyond a strictly proper counteraffidavit to find a genuine issue of fact. We do not believe it would have been error in the case at bar for the court to have refused to consider these letters. But having done so without apparent objection below, we will not concern ourselves with any possible impropriety. See 6 Moore, Federal Practice .2335 & n. 50 (1959).

Dooley Bros., Inc., is an independent contractor some of whose employees remove rubbish, garbage, and ashes from concerns and federal agencies which are engaged in commerce or in the production of goods for commerce, as well as from local commercial firms and private dwellings. The "debris" is placed in barrels by the customers, and these barrels are picked up on the sidewalk by the defendant's employees and emptied into its trucks. If specially requested, the employees will enter the buildings and pick up the barrels from elevators and loading platforms. The debris is not moved in interstate commerce after its collection. It was estimated that certain named employees spend one-fourth to one-third of their time making collections from establishments engaged in commerce or in the production of goods for commerce. It appears from the letters in the counteraffidavit that some of these customers contract to have their refuse collected three times a week, and others even daily, and that they consider such frequent disposal, because of the nature of the refuse, to be "essential" to carrying on their business. Some speak of lack of space, but others state that inflammability of their waste product would create a fire hazard, and others that its perishable nature would cause accumulations to violate health regulations.

The issue in Kletjian is both narrow and specific, namely, whether the 1949 amendment removed from the purview of the act janitorial services of the sort performed by Didris. Prior to the amendment such services were included. A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 519, 62 S.Ct. 1116, 86 L.Ed. 1638.[2] On the other hand, the particular activities that Dooley Bros. are engaged in, to the extent that they may be thought to differ, have not been judicially passed upon, either before or after the amendment.

Section 3(j) of the act as originally passed, 52 Stat. 1061, 29 U.S.C.A. § 203 (j), provided in part that "for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof.*" (Ital. suppl.) The 1949 amendment substituted for the italicized words, *"or in any closely related process or occupation directly essential to the production."* Act of October 26, 1949, 63 Stat. 911. To some extent the purpose of this statutory change was to limit peripheral definitions adopted by some courts, but in the main it was a nod of approval. See Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 316–317, 80 S.Ct. 739, 4 L.Ed.2d 753. The problem is to determine where the nod stops and the frown begins.

Our difficulties are accented by the legislative history leading to the enactment of the amendment since, as the Supreme Court has pointed out, the reports of the conferees representing the two houses of Congress give somewhat inconsistent explanations. Mitchell v. H. B.

2. Kirschbaum was an even weaker case for the Secretary because the janitorial services there were performed only in the public portions of buildings in which quarters were leased to producers of goods, see Fleming v. A. B. Kirschbaum Co., D.C.E.D.Pa.1941, 38 F.Supp. 204, 205, while in the case at bar Didris worked on premises directly occupied.

Zachry Co., supra, 362 U.S. at page 317, 80 S.Ct. at page 744. However, there is little difficulty in the Kletjian case. Both houses appear to agree that the amendment was not intended to alter Kirschbaum. See H.Rep. No. 1453, 81st Cong., 1st Sess., 95 Cong.Rec. 14928–29 (1949); Report of Majority of Senate Conferees, 95 Cong.Rec. 14875 (1949). (Hereinafter the reports will be cited only to the Congressional Record.) Indeed, even without this suggestion we would assume that Kirschbaum remained intact because the language of the amendment was largely borrowed from the Court's characterization in that case of activities which included the very kind we are here considering. See A. B. Kirschbaum Co. v. Walling, supra, 316 U.S. at pages 525–526, 62 S.Ct. at pages 1120–1121. Appellant contends that it was only the general approach of Kirschbaum which was approved. This claim is seemingly based on the Court's recognition in Zachry that Congress had not approved everything done under the prior language of the act. The argument does not go far enough. See Mitchell v. H. B. Zachry Co., supra, 362 U.S. at page 317, 80 S.Ct. at page 744; Mitchell v. Joyce Agency, Inc., 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740, affirming Durkin v. Joyce Agency, Inc., D.C.N.D.Ill.1953, 110 F.Supp. 918; Mitchell v. Famous Realty, Inc., 2 Cir., 1954, 211 F.2d 198, 199, certiorari denied 348 U.S. 823, 75 S.Ct. 38, 99 L.Ed. 649. Nor is it assisted by pointing out possible inconsistencies. It is too much to hope that unassailable logic can deal with every question in this multifaceted field. In borderline cases we can not draw heavily on analogies any more than we can depend upon formulae or convenient generalizations. See Mitchell v. H. B. Zachry Co., supra, 362 U.S. at page 313, 80 S.Ct. at page 742.

Possibly the best approach to Dooley is to review the district court's opinion setting forth the contentions favorable to the defendant. The court begins by saying that the legislative history of the amendment is of "cardinal significance." If by that it means unusually helpful significance, we cannot agree. As previously pointed out, this history is multidirectional and correspondingly inconclusive. We have the same objection to the court's attributing to the amendment a "disclosed policy and obvious purpose" [181 F.Supp. 314] to limit prior interpretations "generously." While, admittedly, there was an intent to limit, there was an apparent difference of degree disclosed between the House and Senate Reports. Compare 95 Cong.Rec. 14928–29 with 95 Cong.Rec. 14874–75. Even the House view, which interpreted the restrictive nature of the amendment the more liberally, was not announced as "generous." For example, Congressman McConnell, a member of the House Conference Committee, stated that it was estimated to remove from the act "less than 200,000 workers." [3] The Supreme Court described the amendment as introducing "some restraint." Zachry, supra, 362 U.S. at page 317, 80 S.Ct. at page 744. We nowhere find any basis for the district court's enlargement of that characterization to "generous."

However, our rejection of the court's basic approach is not as determinative as is our disagreement with its treatment of what it termed the "dominant factors" of the present case: (1) Neither Dooley nor its employees are actually engaged in interstate commerce or in the production of goods for commerce. This fact has little relevance— witness "repairmen, maintenance men, custodians, or guards," listed by the court itself as examples of persons who are unquestionably covered. (2) Dooley and its employees are in an independent local service industry. The amendment leaves unchanged the principle that it is the nature of the work being done, and not the nature of the employer's business, that is controlling. See Mitchell v. Lublin, McGaughy & Associates, 1959, 358

3. 95 Cong.Rec. 14936. As of this time it was estimated that there were over 20 million covered workers. On this basis less than one per cent would be affected Thirty-eight Annual Report of the Secretary of Labor (1950) pp. 272–274.

U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243; 95 Cong.Rec. 14929, 14875. (3) Dooley's customers include "local businesses and private homes." Such mixed employment has never been held to deprive an employee of coverage. Indeed, as little as 3.3% of an employer's customers in interstate activities was held sufficient prior to the amendment. Roland Elec. Co. v. Walling, 1946, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. The Senate Report expressly approved this decision, 95 Cong.Rec. 14874, 14875, and one of the House Managers asserted that the House Report had approved it indirectly, 95 Cong.Rec. 14942 (remarks of Representative Lesinski). In the case at bar the employees spent one-fourth to one-third of their time in covered activities. (4) Dooley's type of service is frequently performed by municipal employees. This, no doubt, is true, but we fail to see its relevance. (5) "A layman * * * would never think of the rubbish collector as in an occupation related to producing goods." This is a novel and, we believe, highly dangerous test. There are many things about many statutes that might seem incomprehensible even to lawyers if they lacked appropriate historical knowledge and legal experience.

Finally, the court felt that rubbish collectors are more like window washers, who admittedly[4] were intended to be removed by the amendment, than they are like some other workers who were not excluded. Even if this approach were permissible, we would question the accuracy of the court's comparison. We conceive of many differences between occasionally cleaning a window and the continuous process of removing debris which the letters in the affidavit indicate were necessary to efficient or even lawful carrying on of the interstate business. Moreover, the court apparently conceded that rubbish removal was "directly essential" to Dooley's customers, but thought it not "closely related." It appears to us that Congress wished to exclude window washers because it considered them nonessential. See 95 Cong. Rec. 14936 (remarks of Congressman McConnell).

In any event, we think the court misinterpreted the phrase "closely related." In Casa Baldrich, Inc. v. Mitchell, 1 Cir., 1954, 214 F.2d 703, at pages 706–707, Judge Magruder succinctly analyzed its meaning. An activity is to be considered remotely, as distinguished from closely, related when "it ministers to the requirements of workers who are not themselves in the actual production of goods for commerce." The Supreme Court has subsequently drawn the same distinction in the Zachry case. There the Court separated repair and maintenance from construction of a dam. It agreed that both might be directly essential to producers relying on water. It said maintenance and repair were associated with operation of the dam—that is, the function of supplying water—but that building the dam was more remote—only making it possible that, at a later stage, water could be supplied. 362 U.S. at page 319, 80 S.Ct. at page 319.[5] In effect, although we dislike generalizations, we think at least it can be said that what Congress intended to preclude was a kind of comprehensiveness which would permit the linking of a lost horseshoe nail with a lost kingdom. In the present case the removal of the debris seems as closely related as it does essential.

4. The House Report expressly disapproved of Martino v. Michigan Window Cleaning Co., 1946, 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603, which had held window washers were employees under the act. 95 Cong.Rec. 14929. The Secretary has accepted that limitation.

5. In explaining the phrase to the House, one of the House Managers gave what is perhaps an even more vivid example. Employees of a dealer who sells sawmill equipment to a producer of mine props, which are sold to a mine within the same state producing coal for commerce, are excluded; but the employees of the mine prop producer are included. 95 Cong. Rec. 14942 (remarks of Representative Lesinski).

In Kletjian v. Mitchell the judgment of the district court will be affirmed, and in Mitchell v. Dooley Bros., Inc., reversed and the case remanded for further proceedings.