WALLING, Adm'r of Wage and Hour Div., Dept. of Labor, v. SWIFT & CO.

No. 7993.

Circuit Court of Appeals, Seventh Circuit.

Oct. 27, 1942.

KERNER, Circuit Judge, dissenting.

Warner W. Gardner, Sol., Milton C. Denbo, Atty., Irving J. Levy, Acting Sol., and Mortimer B. Wolf, Asst. Sol., Dept. of Labor, all of Washington, D. C., and Frank J. Delany, of Chicago, Ill., for appellant.

Miles G. Seeley and Edgar B. Kixmiller, both of Chicago, Ill. (Mayer, Meyer, Austrian & Platt, of Chicago, Ill., of counsel), for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff, as Administrator of the Wage and Hour Division of the Department of Labor, brought suit against the defendant to enjoin it from violating Sections 7, 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A., Section 201. The bill alleged that the defendant in the manufacture of goods for commerce had failed to pay its employees time and a half for overtime in excess of the applicable statutory workweek, and was shipping goods so manufactured in interstate commerce.

The defendant replied, denying the violations and claiming exemption of its employees under Section 7(c) of the Act, which reads as follows: "In the case of an employer engaged * * * in handling, slaughtering, or dressing poultry or livestock, the [overtime] provisions * * * during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

The defendant is a large packer engaged in handling, slaughtering and dressing poultry and livestock for the consumer's market. In the livestock processing, the defendant processes cattle, hogs, calves and sheep at its Chicago plant, which is the only plant of the defendant involved.

The court found the facts to be as the plaintiff alleged, but that certain employees of the defendant were engaged in the handling, slaughtering and dressing of poultry and livestock within the exemption of Section 7(c). The employees within this exemption worked in some sixteen departments of the defendant's plant engaged in the handling, slaughtering and dressing of livestock. The court therefore granted the injunction as to all employees of the defendant except the employees in the sixteen departments which the court found came within the exemption of Section 7(c). As to the employees under Section 7(c), the court provided: "Except that during a period or periods of not more than fourteen (14) workweeks in the aggregate in any calendar year the defendant may employ any employee engaged throughout each workweek of such period or periods in handling, slaughtering or dressing livestock, as those terms have been construed by this Court, which construction is hereinafter set forth, and any employee engaged throughout each workweek of such period or periods in those portions of the plant of the defendant devoted to handling, slaughtering or dressing of livestock, all of whose work in each such workweek is a necessary part of handling, slaughtering or dressing of livestock, for a workweek longer than forty (40) hours without paying the said employee wages for his employment in excess of forty (40) hours in such workweek at a rate not less than one and one-half times the regular rate at which he is employed. The fourteen (14) workweeks may be taken by the employer as to employees individually rather than as a group so long as each employee for whom the exemption is taken is throughout each of such workweeks engaged in handling, slaughtering or dressing livestock, as those terms are hereinafter construed, or throughout each of such workweeks is engaged in an occupation wholly within the portions of the plant of the defendant devoted to handling, slaughtering or dressing of livestock, which occupation is a necessary part of the handling, slaughtering or dressing of livestock. The defendant may not, however, employ any such employee in or about its plant at the Union Stockyards, Chicago, Illinois, for more than fourteen (14) workweeks in the aggregate in any calendar year unless the said employee receives compensation for his employment in excess of forty (40) hours in such workweek at a rate not

less than one and one-half times the regular rate at which he is employed."

No question arises on this appeal as to the limitation of Section 7(c) to the sixteen departments of the defendant engaged in handling, slaughtering and dressing livestock. The plaintiff has challenged here the application of this exemption to the employees who work in these departments that are engaged in handling, slaughtering and dressing of livestock. The contested issue is as stated by the plaintiff in his brief, and we quote: "Whether the fourteen workweeks exemption granted by Section 7(c) of the Fair Labor Standards Act for the handling, slaughtering or dressing of livestock, must be taken by the employer during the same workweeks for all the employees in the place of employment who are within the scope of exemption, or whether, as held by the District Court, the employer may take the exemption as to each employee individually."

As we understand the application as contended for by the plaintiff, it would operate something like this:

Although the defendant processes cattle, hogs, calves and sheep, in the processing of each of which peaks occur which cannot be forecast and may occur in the processing of each of these different animals at the same or different times, if the peak comes on in cattle and runs for the full fourteen weeks, requiring overtime in this department, and no hogs, calves or sheep are killed at all and peaks may thereafter occur in the processing of each of them, the right to work the employees overtime in these departments without liability for time and one-half has been exhausted. In other words, whenever overtime is claimed for a week for any number of employees in the one department, notwithstanding the fact that the other three departments were not working at all, an overtime week is charged up against them also.

Under the application of this exemption as contended for by the defendant and authorized by the decree of the District Court, the defendant could apply the exemption to the individual employees in the exempt departments, but no employee could be worked in the aggregate more than fourteen weeks' overtime without being paid time and one-half therefor.

Let us assume there are one hundred men in the cattle department. Under the plaintiff's interpretation, if overtime were claimed for a week for ten men in the cattle department, it would mean a week claimed for all the men in the cattle department who had not worked overtime, as well as all of the men in the hog, sheep and calf departments who had not worked any overtime, whereas under the defendant's construction and that approved by the District Court's decree, the week's overtime would apply to the ten individuals who worked and to no one else.

Thus it will be seen that the defendant's construction and that of the District Court permits of greater flexibility, and enables the employer, by applying the exemption to the individual employee, to meet the peak in any part of the departments engaged in handling, slaughtering or dressing poultry or livestock. It was the purpose of Congress, in granting this exemption, to enable the employer to avoid the burden of time and one-half for overtime in those seasonal or peak periods when he must work to take care of the product on the market, the amount of which depends upon factors beyond his control. If the plaintiff's construction is adopted, it is obvious that the processor could not protect himself against all the peaks that might come in his business within an aggregate of fourteen weeks. On the other hand, applying the exemption in accordance with the defendant's contention and that of the District Court, the peaks could be met and no employee within the exempt departments be compelled to work in the aggregate more than fourteen weeks without being paid time and a half for overtime.

Under the application contended for by the plaintiff, discrimination would exist between different packers. For instance, take a packer who employed fifty men and they killed hogs and cattle, and the fifty men worked on both indiscriminately. These fifty men could be exempt for fourteen weeks, or a total of seven hundred man weeks. But if a packer employed twenty-five men killing cattle and twenty-five men killing hogs, and the cattle men worked fourteen weeks overtime, or three hundred and fifty man weeks, the exemption would be exhausted and he would have an exemption of three hundred and fifty man weeks against seven hundred for the other.

Take another example. Suppose one processed only hogs. There are many such

packers. Since he kills only hogs in his plant, he would be sure to get fourteen weeks exemption for each employee. But if he killed four species of livestock in one plant, he may not get fourteen weeks as to all his employees although they were all engaged in the work of handling, slaughtering and dressing livestock, which are the exempt operations.

In other words, under the plaintiff's interpretation, if one kills only one species of livestock he may get the fourteen weeks exemption as to all employees, but if he kills all four he may not.

We do not believe the Congress intended to discriminate between processors on that basis. Congress was attempting to relieve all processors from the burden of overtime pay when they were not in any position to determine whether they worked overtime or not, because of the perishable nature of the product they processed, and the lack of control the processors had over the amount of perishable goods offered in the market. Of course, the processor could control the overtime, as plaintiff suggested in the oral argument, by buying less. That he could do and permit the loss or deterioration of perishable products, but Congress provided this exemption in order that there might be no compulsion upon the processor to control the overtime at the expense of the deterioration or loss of the perishable products.

It has been suggested by the plaintiff that if the District Court's interpretation is adopted, the packer would be able to shift workers from department to department out of consideration of the fact of the amount of overtime the employees had worked, and thus get the benefit of fourteen weeks as to each employee. The plaintiff's apprehension on this score is quite far-fetched, as we understand the division of labor in the handling, slaughtering and dressing of livestock. The tasks are for the most part such as to require training and especial skill of the workman. Workmen cannot be shifted from one department to another like pawns upon a chessboard.

Because of the greater flexibility of the application of the exemption which enables the processor to meet the difficulties in his business from which Congress was trying to relieve him, and because of the manifest discrimination possible in the application contended for by the plaintiff, we think the interpretation provided by the court in its decree was not erroneous and was not an unwarranted construction of the Act. The mandate of this statute is not so positive nor so crystal-clear as to lead unerringly to the construction reached by the plaintiff-administrator.

We have given consideration to the fact that this is an administrative interpretation of the Act promulgated by the Department, but we do not think it has determinative influence. It must be remembered that this interpretation of the Department is new and affords the very basis of this controversy, in the making of which the defendant has challenged this ruling at its first opportunity.

In our opinion, for such a ruling to prove persuasive it should have been settled and acted upon by the Department and acquiesced in by those affected thereby for such time as would lead one to believe that because of the acceptance of this interpretation, it had gained some sanction.

The judgment of the District Court is affirmed.

KERNER, Circuit Judge (dissenting).

The language of that part of § 7(c) of the Act involved in this case is ambiguous.

In the District Court the defendant contended that the proper meaning is that in the case of an employer engaged in handling, slaughtering, or dressing livestock, the overtime provisions of § 7(a) shall be inapplicable, for periods totalling not more than fourteen workweeks in one calendar year for each individual employee, to the employees throughout any plant in all or a part of which the employer is so engaged; while the plaintiff contended that the proper meaning is that the overtime shall be inapplicable, for periods totalling not more than fourteen workweeks in one calendar year, to the employees in those sections of its plant in which the employer is so engaged—the exemption to be taken at one and the same time for all such sections; but the court held the meaning to be that the overtime shall be inapplicable, for periods totalling not more than fourteen workweeks in one calendar year for each individual employee, to the employees in those sections of its plant in which the employer is so engaged.

To hold that Congress intended the section to have the meaning given it by the

court below would, in my opinion, defeat the purpose of this special exemption provision. Such a holding would allow an employer to engage in the following practices: (1) An employer operating an establishment engaged in part in work to which the fourteen workweek exemption is applicable and in part in work to which it is not applicable, could multiply the aggregate period of exemption for the former type of work by interchanging the employees in the two departments after the exemptions of the members of one group had been exhausted. (2) The exemption of fourteen workweeks would also be expanded for each position in an exempt department merely by reason of the turnover of labor, whether such turnover were normal or increased by discharges for this purpose. Each new man would bring with him a fourteen workweek exemption in addition to the fourteen workweek exemption of the man who had preceded him in the job. Expansion of the fourteen workweek exemption for each position would thus occur in proportion to the rate of labor turnover. (3) An employer engaged either wholly or in part in one of the "exempt" industries named in the last half of § 7(c) could evade the general purpose of the Act by continuously keeping each "exempt" department undermanned. In periods when the work load was normal, the working of a few men several hours overtime would complete the work. In periods of peak work load, a larger number of men could be worked many hours overtime in order to complete the work.[1] By this means the employer would gain for his business a year-round exemption when Congress intended the exemption to apply only during periods of peak load.

There remain two other possible constructions of the section in question.

If Congress intended that the fourteen workweek exemption be available to each employer only once despite the fact that the employer in effect constitutes a group of industries dealing at one and the same time with different products which have different seasonal peaks, then § 7(c) should be construed as having the meaning contended for by the plaintiff. It does not seem probable, however, that this was the intent of Congress. The fourteen workweek exemption would mean very little under this construction to an employer engaged at one and the same time in handling a large number of products, each of whose seasonal peaks occurred at a different time. It has been said that the purpose of the exemption provision is to be fair to an employer who cannot avoid seasonal variations in work load. A purpose more in keeping with the general policy of the Act, it seems to me, is to attempt to avoid, in certain types of businesses, the seasonal hirings and lay-offs which the employer would no doubt be forced to adopt to avoid a wage bill increase during the peak seasons because of the payment of overtime wages. But whatever the reason, it was felt desirable to give a fourteen workweek exemption from the overtime provisions of the Act each year to employers trying to fit a group of employees to work which fluctuated in amount by reason of the seasonal nature of supply of the product involved. This purpose would not be effectuated by the construction contended for by the plaintiff, when different products are being handled at the same time by different groups of employees working for the same employer.

If Congress intended that the fourteen workweek exemption be applied according to the commodity or product, then the section in question should be construed to mean that, in the case of an employer engaged in handling, slaughtering, or dressing livestock, the overtime shall be inapplicable, for periods totalling not more than fourteen workweeks in one calendar year, to the employees in those sections of its plant in which the employer is so engaged—the exemption to be applied separately to each section dealing with a different kind of livestock. It seems probable that this was Congress' intent, if it is a fact that seasonal peaks for a single product of the types mentioned in the last half of § 7(c) are likely to total fourteen workweeks in one calendar year. For, if it is

---

[1] It is not necessary to assume that the periods of peak load aggregate only fourteen workweeks or less for this scheme to become possible. If the periods of peak load aggregated more than fourteen workweeks, the men working overtime would only have to work more hours of overtime to get the work done. If the periods of peak load aggregate less than fourteen workweeks, this method of evasion becomes even more flagrant.

254

true that a single product might well use up the full fourteen workweek exemption the construction suggested by the plaintiff would penalize an employer who handles many "exempt" products in different sections of the same plant, rather than operating a number of plants each of which handles a single "exempt" product. I do not believe that Congress could have intended to make such a distinction.

The term "place of employment where he is so engaged" may have been intended to have any of several meanings, depending on the result desired by Congress: (1) In the present case, the entire Swift & Co. plant at the Union Stockyards, Chicago, Illinois, could be included in the term. It was apparently the contention of the defendant in the District Court that this was the proper interpretation. This meaning was rejected by the Court, which said that the term "place of employment" as used in § 7(c) means only those portions of the plant devoted by the employer to the handling, slaughtering, or dressing of livestock. (2) All sections of the Chicago plant engaged in the handling, slaughtering, or dressing of livestock of all kinds could be included in the term. The position of the plaintiff is grounded on the implied assertion that this is the meaning of the term. (3) Each separate section of the Chicago plant which is engaged in the handling, slaughtering, or dressing of a different kind of livestock could be meant by the term. I believe that this is the meaning Congress intended the term to have as used in § 7(c).

I conclude that a reasonable construction of § 7(c) requires us to hold that in the case of an employer engaged in handling, slaughtering, or dressing livestock, the overtime shall be inapplicable, for periods totalling not more than fourteen workweeks in one calendar year, to the employees in those sections of its plant in which the employer is so engaged—the exemption to be applied separately to each section dealing with a different kind of livestock. This conclusion follows from the belief that Congress did not intend to permit the practices described above in the third paragraph, and also felt that it was possible that seasonal peaks for a single "exempt" product might total as high as fourteen workweeks in a year.