No. 35,643

Ed Sykes as an Individual and as agent for Mack Phillips, John W. Phillips, Lewis Griffin, Le Roy Griffin, Wesley V. Lewis and Albert Headley, *Appellees*, v. Fred Lochmann, *Appellant*.

(132 P. 2d 620)

Opinion filed January 9, 1943.

*Fred Hinkle,* of Wichita, argued the cause for the appellant.

*Roy L. Rogers* and *Clifford H. Pugh,* both of Wichita, argued the cause, and *Joe T. Rogers,* of Wichita, was on the briefs for the appellees.

The opinion of the court was delivered by

Allen, J.: This was an action under the fair labor standards act of 1938 to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages and attorneys' fees. As authorized by the act, plaintiff brought the action in his own behalf and on behalf of certain other employees similarly situated. The trial court gave judgment for plaintiff, and defendant appeals.

The defendant Fred Lochmann is the owner and operator of a packing plant in Wichita known as the Sunflower Sausage and Packing Company. The cattle and hogs slaughtered at the packing plant were purchased by defendant at the union stockyards in Wichita. All the cattle and hogs were slaughtered in defendant's plant, and the edible portions of the animals were sold as meat products in the state of Kansas.

The hides of the cattle were sold to the Reed Hide Company of Wichita. The latter company sold and shipped the hides to a

tannery in St. Louis, Mo. The offal and bones were sold to the Wichita Desiccating Company, and after processing in the plant of that company the finished product was shipped to points outside the state of Kansas.

The plaintiff and the other employees customarily performed different types of work each day, including the slaughtering, skinning and dressing the carcasses of the animals, separation of the bones and meat, removal of the hides and offal and other activities about the packing plant.

From the hides and offal defendant realized approximately the sum of $12,000 each year.

The plaintiff, Sykes, and the various employees on whose behalf the action was brought, are referred to as the plaintiffs. The petition set forth the pertinent facts as to the employment of the various plaintiffs, and asked judgment for the unpaid minimum wages, unpaid overtime compensation, liquidated damages and attorneys' fees alleged to be due plaintiffs under fair labor standards act of 1938. The answer of defendant contained a general denial, a specific denial that defendant during the time alleged in the petition was engaged in interstate commerce or producing goods for interstate commerce within the provisions of the fair labor standards act of 1938, and a specific denial that defendant was indebted to the plaintiffs in any sum whatsoever.

The jury returned a verdict in favor of the plaintiffs. Judgment was entered in accordance with the verdict, and defendant appeals.

The trial court made findings of fact to which reference will be made.

1. It is contended defendant was not engaged in commerce or in the production of goods for commerce, and that defendant's activities were not within the fair labor standards act of 1938 (29 U. S. C. A., §§ 201-219).

Section 6 (a) of the act provides:

"Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce, wages . . ." (29 U. S. C. A. § 206.)

Section 7 (a) of the act provides:

"No employer shall, except as otherwise provided . . . employ any of his employees who is engaged in commerce or in the production of goods for commerce. . ." (29 U. S. C. A., § 207.)

The act defines "commerce," "goods" and "produced" as used in section 6 (a) and 7 (a) above quoted, as follows:

"Sec. 3 (b). 'Commerce' means trade, commerce, transportation, transmission, or communication among the several states or from any state to any place outside thereof." (29 U. S. C. A., § 203 [b].)

"Sec. 3 (i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." (29 U. S. C. A., § 203 [i].)

"Sec. 3 (j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any state." (29 U. S. C. A., § 203 [j].)

Under the plain language of the statute and under the controlling decisions, *United States v. Darby*, 312 U. S. 100, 61 S. Ct. 451, 85 L. Ed. 609; *Kirschbaum v. Walling*, 316 U. S. 517, 62 S. Ct. 1116, 86 L. Ed. 1638; *Warren-Bradshaw Drilling Co. v. Hall*, 317 U. S. 88, 63 S. Ct. 125, 87 L. Ed. 99 (advance sheet), the application of the act depends upon the character of the employees' activities.

The hides and offal were not only "goods" but were "produced" within the meaning of those terms as defined in the act.

In the Kirschbaum case the act was held applicable to maintenance employees of the operator of a loft building whose tenants were engaged in the production of goods for commerce. The employees were engineers, firemen, elevator operators, electricians, watchman, porters and carpenters. The court held that since the production could not proceed without the services of such maintenance employees they were engaged "in any process or occupation necessary to production . . ."

In the Warren-Bradshaw case the employees were members of a rotary drilling crew and worked on wells in Texas—the employer was not the owner or lessee of any of the land upon which the wells were drilled and had no interest in the oil produced. As the employer could anticipate at the time of the drilling that the oil produced from the wells would move into other states, the act was held to extend to such employer.

Under these decisions the "necessary-to-production" requirement may be satisfied even where the employees do not physically come in contact with the goods produced.

Were the plaintiffs, employees of defendant, engaged in commerce, within the meaning of the provisions of the act? We turn to the findings of the trial court.

"FINDINGS OF FACT

. . . . . . . . . . . . . . . . .

"2. The defendant at all times and places in the petition alleges owned and operated the industry known and designated as the Sunflower Sausage Company located at Wichita, Kan.

"3. At the time alleged in the petition defendant employed all of the persons mentioned in the petition in said industry.

"4. At the times and places aforesaid, defendant, by the aid of his said employees and others, produced and sold goods used in commerce as those words are defined in the act above mentioned.

"5. During all of said times, defendant made no shipments of said goods outside the state of Kansas; filled no orders for shipment to customers outside the state of Kansas; sold his goods to customers only in the state of Kansas; and was not subjected to the federal inspection, although often visited by federal inspectors.

. . . . . . . . . . . . . . .

"10. That the defendant sold the hides off the cattle slaughtered by him to the Reed Hide Company of Wichita, Kan., a company engaged in the collection and purchase of hides and who sold the hides purchased by them from the defendant after baling and salting said hides to concerns located outside the state of Kansas and shipped said hides in the channels of interstate commerce to points outside the state of Kansas, all with the knowledge of the defendant.

"11. The offal and hoofs, after being made into by-products by the Wichita Desiccating Company of this city, were sold as such by-products and shipped to points outside of the state of Kansas, with the knowledge of the defendant that said by-products would be sold outside the state of Kansas.

"12. Defendant purchased from points outside the state of Kansas cheese and oleomargarine for the purpose of resale of the same to retail grocery establishments in the state of Kansas.

"Defendant also purchased from points outside the state of Kansas spices, pepper and binding meal to be used in the manufacture by him of sausage and luncheon meats.

"13. Each of the claimants was employed by the defendant during the time set out above in the production of goods for commerce and each of said claimants was engaged in commerce and the production of goods for commerce as those terms are defined by the fair labor standards act of 1938.

"14. Each of the claimants was engaged in a process of occupation necessary to the production of the hides above mentioned and in an occupation necessary to the production of the offals and hoofs and the by-products made by the Wichita Desiccating Company for interstate sale and shipment.

"15. The business of the defendant in the slaughtering, skinning and butchering of animals was not carried on by departments, that is, that there are

no clearly defined departments or segregation of activities among the employees of the said defendant.

"The customary practice of the defendant in slaughtering animals during the time of the employment of the above-named claimants in this action was to call available employees to slaughter animals as soon as said animals were brought to defendant's establishment from the union stockyards. Upon the completion of the slaughtering, skinning and dressing of such animals all employees who were engaged in such work were then directed to bone out, that is, separate meat and bone and to assist in the various grinding and cooking processes necessary for the manufacture of sausage, luncheon meats, etc.

"Each of the claimants customarily performed several different types of work upon each day of their employment by the defendant, including the slaughtering, skinning, and dressing of the animals' carcasses and separation of bones and meat, removal of the hides and offals, including hoofs and the depositing of the same upon the shipping dock for delivery to the purchasers thereof, as above set out, together with other activities incident thereto and incident to the manufacturing of sausage and luncheon meats."

In sections 6 and 7 of the act, congress was dealing with employees (not employers) who are engaged "in commerce or in the production of goods for commerce." Under these sections it is the work of the employee and not the business of the employer that is of primary importance.

The trial court found that the hides and by-products were sold out of the state, and that from the sale of the hides defendant realized about $12,000 annually. Under the findings the plaintiffs were engaged in the production of these articles. There was reasonable ground for the defendant to anticipate, at the time of the handling, slaughtering and dressing of the livestock, that the hides and by-products would move into other states. Certainly defendant could not claim ignorance of the interstate character of such products.

The trial court found the value of the hides approximately $12,000 per year. This was a substantial amount, but assuming it was a small percentage of the total production from defendant's plant, and that only such small percentage flowed into the channels of interstate commerce, defendant would not be relieved from the impact of the act. In *United States v. Darby,* supra, the supreme court recognized that congress "made no distinction as to volume or amount of shipments . . ." but on the contrary "adopted the policy of excluding from interstate commerce all goods produced for the commerce which do not conform to the specified labor standards . . ." Regularly recurring shipments in interstate commerce of this magnitude may not be regarded as so trivial or un-

substantial that congress must be presumed not to have intended the act to apply to their production.

The motive and purpose of congress in the enactment of the fair labor standards act is set forth in 29 U. S. C. A., sec. 202, as follows:

"(a) The congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several states; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of sections 201-219 of this title, through the exercise by congress of its power to regulate commerce among the several states, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power."

Mindful of the purpose of congress set forth in this declaration of policy, the broad provisions of the act to effectuate that purpose and of the controlling decisions of the supreme court above cited, we think it clear that the plaintiffs, under the findings made by the trial court, were engaged in the production of goods for commerce, and are within the protection of the act.

2. It is contended that under section 7 (c) (29 U. S. C. A. § 207c) defendant is entitled to the 14-week exemptions from hour provisions of the fair labor standards act for seasonal operations.

The question was considered in *Fleming v. Swift & Co.*, 41 F. Supp. 825. It was held as stated in paragraph 12 of the headnotes:

"An employer may not claim an exemption for any employee under subsection (c) of section 7 of the fair labor standards act, if employee during any part of the work week for which exemption is claimed does any work which does not fall within the scope of exemption."

We have examined "Interpretative Bulletin No. 14" (Wage and Hour Manual, 1942 ed., 404, 414) and the clarification of the 14-week exemptions from the act for seasonable operations contained in a letter from the general counsel of the wage and hour division to the Institute of American Meat Packers (Wage and Hour Manual, 1942 ed., 423) and find these administrative rulings conform to the decision in the Fleming case. While these administrative interpretations are not binding on this court, they are highly signifi-

cant. Under finding No. 15 of the trial court, the plaintiffs devoted only a part of their time to handling, slaughtering and dressing livestock, and a part of their time to nonexempt activities. In such case, under the decision in the Fleming case and the rulings of the administrator, the exemption provision does not apply. This seems to be the correct construction to be applied to the provision of section 7 (c) now in question.

3. Section 16 (b) of the fair labor standards act (29 U. S. C. A. § 216b) provides that the court shall, in addition to any judgment awarded the plaintiffs, allow a reasonable attorney's fees to be paid by the defendant.

Under the express language of the act any amount allowed as attorney's fees is to be in addition to any judgment awarded the employee. The act contemplates that the employee shall receive the full amount of any award made to him, and any contract that would allow an attorney any part of the award made to any employee would be void.

From the record before us it appears the court rendered judgment for a specific amount in favor of each plaintiff and gave judgment against defendant for attorney's fees in the sum of $2,000, with an additional amount if appeal were taken. The total amount of the judgment in favor of the several plaintiffs was $4,938.36. We find no support in the record for the contention that if plaintiffs prevail, the attorneys for plaintiffs will receive more than the plaintiffs. Nor do we find, upon examination of the record, evidence of abuse of discretion on the part of the trial court in the allowance of the fee above stated to the attorneys of the plaintiffs.

Other errors assigned have been considered, but do not call for extended discussion.

The judgment is affirmed.

WEDELL, J., concurs in the result.