**SELAN et al. v. BECKER.**

**Civ. A. No. 4306.**

District Court, E. D. Wisconsin.

May 6, 1947.

David Beznor, of Milwaukee, Wis., for plaintiffs.

Max D. Davidson, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This is a suit for overtime compensation brought under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. There is no dispute as to the facts and plaintiffs have moved for summary judgment.

The employees here involved slaughtered cattle, removed the hides, split the carcasses, and did other incidental work in connection therewith. The beef and edible offal were sold in Wisconsin for local consumption, and unsegregated portions of the hides and inedible offal were shipped outside of the State of Wisconsin, but the proceeds therefrom did not constitute more than 10% of the defendant's gross revenue. For a period prior to the time covered in the complaint, and pursuant to a collective bargaining agreement, the employees had been paid at an hourly rate. This contract required the employer to pay time and one-half the hourly rate for hours in excess of eight hours per day, and double time for work on Saturday after twelve noon. In order to stimulate production defendant agreed to pay the employees at an incentive rate based upon one hour's pay for each head of cattle slaughtered. The employees

on the killing floor had theretofore normally killed one head of cattle per hour.

 The first question to be decided is whether the plaintiffs were engaged in the production of goods for commerce within the meaning of Sec. 7(a) of the Fair Labor Standards Act of 1938. Defendant relies on Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, to the effect that if a substantial part of an employee's activities relates to goods in interstate commerce "he is covered by the act." Defendant points out that the Wage and Hour Division considers "substantial" to mean 20% and that in the case at bar 10% of income from products in interstate commerce is far below the requirement of "substantial."

There is no provision in the Act which requires that the employees be "substantially" engaged in the production of goods for commerce in order to be entitled to the benefits of the Act. A construction of the Jacksonville Paper case was given by the Supreme Court in D. A. Schulte, Inc., v. Gangi, 328 U.S. 108, 119, 66 S.Ct. 925, 931, in which the court said that the Jacksonville Paper Company case "was concerned with whether a wholesaler's employees who handled stock were in commerce, not whether they were engaged in the production of goods for commerce." I conclude that the plaintiff's employees were engaged in the production of goods for commerce.

A case with a similar fact situation is Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236. In that case all of the edible meat as well as the inedible offal and a large proportion of hides were sold within the State of Oklahoma. The inedible offal was rendered within Oklahoma and a substantial portion thereof was shipped outside of the State by the rendering company. The remaining hides were shipped outside of the State of Oklahoma by a dealer who purchased them from the packer. Although the packer argued that 96 percent of the value of the carcasses went into meat products which were sold in intrastate commerce, yet the court held that the employees on the killing floor produced goods for commerce within the meaning of the Act. Other cases sustaining the same

viewpoint are Crompton v. Baker, 220 N.C. 52, 16 S.E.2d 471; Sykes v. Lochmann, 156 Kan. 223, 132 P.2d 620; Brooks Packing Co. v. Henry et al., 192 Okl. 533, 137 P.2d 918.

The next question for decision is whether plaintiff's employees were paid for overtime "at a rate not less than one and one-half times the regular rate at which he is employed." Defendant states the basis of pay as follows: "The employees were formerly paid on an hourly basis. To enable them to increase their wages and as an incentive to produce more, it was agreed to give them one hour's pay for each cattle. If they handled one cattle an hour they received one hour's pay. If they handled two cattle per hour they received two hours' pay. If they handled more than eight cattle in any one day they were paid time and one-half the hourly rate even if they did not work overtime hours in the day; and they received this overtime pay even if they did not work more than 40 hours in any week." Defendant then argues that the case at bar is governed by the decision in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, where the principle was laid down that an employer and employee may establish the regular rate of pay by contract, provided the statutory minimum is respected.

■ I believe that the situation in the case at bar is analogous to that present in Walling v. Harnischfeger Corporation, D. C., 54 F.Supp. 326, decided by this court. While that decision was reversed by the Circuit Court of Appeals, 7 Cir., 145 F.2d 589, it was in turn approved by the Supreme Court in Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, 1250, 89 L.Ed. 1711. The inquiry must be as to the rate of pay which the employees did in fact regularly receive. The Supreme Court said in the Harnischfeger case, 325 U.S. at page 432, 65 S.Ct. at page 1249, 89 L.Ed. 1711: "* * * When employees do earn more than the basic hourly rates because of the operation of the incentive bonus plan the basic rates lose their significance in determining the actual rate of compensation. * * *"

In the case at bar the actual basis of compensation was the number of cattle slaughered rather than the number of hours worked. The employees were paid on the basis of one hour's pay regardless of the time it took to slaughter that head of cattle. As an example, when an employee slaughtered twelve cattle in eight hours, his wage was not based on the number of hours he worked. What actually occurred was that this was piece-work production, and the hourly rate is the piece-work earnings divided by the number of hours worked. The fact that the piece-work rates were based upon the hourly rate that was theretofore in effect does not convert the piece-work production into hourly employment.

I conclude that the payment of wages to employees here concerned without regard to the actual overtime hours worked, but based upon piece-work rates, violated Sec. 7(a) of the Act and it follows that the employees are entitled to overtime compensation.

The next question to be considered is the effect of Sec. 7(c) which provides in part that the overtime provisions of the Act shall not apply during a period of not more than fourteen work weeks in the aggregate in any calendar year to those employees engaged in "handling, slaughtering, or dressing poultry or livestock." Plaintiff relies upon Administrative Interpretive Bulletin 14, Paragraph 24: "Where the employees work overtime for more than fourteen workweeks, the first fourteen workweeks in which overtime is worked and for which they do not receive overtime compensation at the regular pay periods will be deemed to have been claimed by the employer under the exemption."

While the administrator's interpretation should be given consideration by the court, I do not consider it to be controlling in this case. When Congress provided an exemption "during a period or periods of not more than fourteen (14) workweeks in the aggregate in any calendar year," it did not have in mind any such limitation as provided by the administrator's interpretation. The determination of the court in Fleming v. Swift & Co., D.C., 41 F.Supp. 825, 831, affirmed in Walling v. Swift & Co., 7 Cir., 131 F.2d 249, was to the same effect. Therefore, plaintiffs' contention in this respect will be overruled, and the defendant may select the fourteen work weeks to which the exemption will apply.

The motion for summary judgment will be granted. An audit of the accounts to determine the amount of overtime compensation due will be undertaken, and if the parties cannot agree upon the computation, the same will be submitted to the court.