McCOMB v. BENZ CO.

Civ. No. 321.

United States District Court
S. D. Indiana, New Albany Division.
Dec. 29, 1949.

Herman Grant, Regional Attorney, U. S. Department of Labor, Wage and Hour Division, Chicago, Ill., for plaintiff.

Paul V. Wycoff, Batesville, Ind., for defendant.

BALTZELL, District Judge.

### Special Findings of Fact

Pursuant to Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., the Court now states its Special Findings of Fact (hereby adopting the Stipulation of Facts of the parties as part of such Special Findings of Fact), as follows:

### Stipulation of Facts

It is hereby stipulated by and between the plaintiff and the defendant, through their respective attorneys, that the following facts are true and may be accepted as true without further proof for the purposes of the trial and hearing on the complaint and answer in the above-entitled cause.

**1**

That the defendant is, and at all times hereinafter mentioned was, a corporation organized and existing under the laws of the State of Indiana.

**II**

Defendant has at all times hereinafter mentioned maintained a slaughtering and packing plant located at the junction of Highways numbered 229 and 46, Batesville, Indiana, hereinafter referred to as the plant. The plant consists of a slaughtering-and-dressing building, a hide house, a power house, a lard-rendering house, a tallow and meat-scrap storage house, and a tool house. In addition there is a platform where the hogs and cattle, all of which are purchased for slaughter from various sources within the State of Indiana, are received. There is also a system of pens and chutes, a pig pen and a barn in which the cattle are handled and fed.

The slaughtering-and-dressing building consists of a hog-killing shed, a cattle-stunning chute, the slaughtering room proper containing hog-killing equipment, an overhead crane system for the slaughtering and dressing of cattle, a sausage room, three coolers or cold-storage rooms, and a room containing the machinery and vat used in rendering tallow and pressing meat scraps.

In the plant the defendant employs, and has employed, Martin Nobbe, Leo Benz, Edmund Etter, George Lewis, and James Firsich in the production of edible meats, tallow, hides, and by-products.

**III**

Defendant employs six additional full-time employees, and intermittently employs one or more of the production employees on busy days, such as Saturday, in its meat market located about a mile from the plant at Batesville, Indiana. This market sells all of the edible meat products produced in the plant. The meat market also sells staple products purchased from wholesalers, including bread, cookies, crackers, cheese, canned goods, and other packaged products.

**IV**

In the production of edible meats, tallow, hides, and by-products at the plant, cattle are handled, slaughtered, and dressed, tallow is rendered, hides are cured, and by-products are processed.

**V**

The handling operations include all of the activities performed by the plant employees from the time the defendant takes possession of the cattle to the time of slaughter. The handling of cattle begins at the receiving platform. They are yarded, stabled, and fed. For a period from one day to a week, they are cared for and rested in preparation for slaughter. Martin Nobbe is employed in this handling work approximately 6 hours a week. Additional handling work is performed in the selection and

sorting of cattle, penning them, and placing the cattle in the stunning chute. In this additional handling work, Leo Benz, Edmund Etter, George Lewis, and James Firsich each spend from 15 to 30 minutes every Tuesday and from 15 to 30 minutes every other Wednesday.

## VI

With respect to the cattle, the handling operations end and slaughtering and dressing operations begin when the animal is placed in the stunning chute. It is stunned by one of the employees and dropped on to the killing floor. The animal is fastened by the hind legs and partially raised by an overhead crane. The blood is drawn. The hoofs and head are severed. The carcass is split. The carcass is fully raised and the guts are dropped into a cart or dinky. The hide is separated from the carcass and removed. The entrails are severed from the carcass and removed. The various organs are segregated from the entrails. Suet and other inedible portions are trimmed from the carcass. The carcass is halved and the halves moved into the cooler. The entrails are cleaned and stored. The suet and other meat trimmings are collected and stored. The killing floor is washed down. The hides are temporarily placed at the side of the room. When hides have been accumulated, they are given a preliminary cleaning, and conveyed to the hide house where they are weighed, spread on a pile, and salted. Each of the above operations is repeated on each succeeding animal in the foregoing sequence until the day's kill is completed. The average full day's kill for the 132-week period from January 1, 1947 through July 16, 1949 was 10.79 cattle. (See paragraph XIII below.)

## VII

Leo Benz, Edmund Etter, George Lewis, and James Firsich interchangeably perform all of the operations described in paragraph VI hereof for at least 8 hours on every Tuesday and an additional 4 hours on every second Wednesday.

## VIII

Either Leo Benz, George Lewis, or James Firsich spends approximately one-half hour a week in spreading on a pile and salting hides in the hide house, where the hides cure until they are picked up by the purchaser monthly.

## IX

Once a week on Thursday, the suet, meat scraps, and other tallow materials are removed from storage and placed in a cart or dinky in the tallow-rendering room. The material is then elevated into a hopper-fed grinder. Here it is ground and deposited into another cart or dinky. This ground material is again elevated and dumped into a hopper-fed vat. It is then cooked until the tallow is rendered. The tallow is drawn off into metal drums for storing. The operation is repeated until all available material has been processed. Following each cooking operation, the residue is removed from the vat and placed in a press. There it is pressed into cakes. In this pressing process, additional amounts of tallow are drawn off into storage drums. The drums of tallow and the cakes of meat scraps are conveyed to the tallow and meat scrap store house. When approximately 10,000 pounds of tallow have been accumulated, it is shipped to The Proctor and Gamble Manufacturing Company at Ivorydale, Ohio.

## X

George Lewis spends approximately 8 to 10 hours a week, Leo Benz spends approximately 4 to 5 hours a week, and James Firsich, in some workweeks, spends 4 to 5 hours in the performance of the operations described in paragraph IX hereof.

## XI

Leo Benz spends approximately 10 hours a week, George Lewis and Edmund Etter spend approximately 8 hours a week, and James Firsich spends approximately 12 hours a week in performing work necessary to the general maintenance and operation of the plant, such as cleaning, repairing, and maintaining machinery and equipment, and in general work around the plant.

## XII

The comparative bulk of the edible and inedible portions to the live weight of the

average beef animal slaughtered in the plant is approximately 53 per cent edible and 47 per cent inedible. Approximately 80 per cent of the inedible portion of the total animal weight is used in the production of tallow, hides, and by-products.

## XIII

During the 132-week period between January 1, 1947 and July 16, 1949, the defendant slaughtered 1,781 cattle. This is an average of 13.49 cattle a week, and an average of 10.79 cattle per killing day.

## XIV

All edible meats produced at the plant are sold to defendant's retail meat market. This transaction appears as a book entry. These meat products are sold locally at retail, together with bread, cheese, canned goods, and miscellaneous staple groceries.

## XV

Each Thursday since January 1945 the defendant's employees have rendered tallow as described above in paragraph IX hereof. The tallow is stored in drums in the storehouse until approximately 10,000 pounds have been accumulated. Since January 1945 defendant has regularly sold and shipped 100 per cent of its tallow to The Proctor and Gamble Manufacturing Company, at Ivorydale, Ohio. During the period from March 1, 1947 to June 19, 1949, 71,981 pounds of tallow, for which the defendant received $12,702, were sold and shipped.

## XVI

Since February 1, 1946, and continuing to the present, 100 per cent of all hides produced in the plant, after being cleaned, salted, and cured have regularly been sold to Richard Burg. Every third Thursday of each month, Richard Burg calls for and picks up the hides. He then transports them by truck to his warehouse in Sharonsville, Ohio. During the period from January 1, 1947 to July 21, 1949, a total of 68,604 pounds of hides, for which the defendant received $14,103, were so sold and shipped.

## XVII

The pancreas, bile, and other by-products of medicinal value are accumulated and sold to Eli Lilly and Company, Indianapolis, Indiana, where, after further processing into pharmaceutical supplies, substantial amounts are shipped in interstate commerce. The income from these sales was $34.00 for 1947, $150.82 for 1948, and $165.39 for the first 9 months of 1949.

## XVIII

At the time the products are produced, as hereinabove described, the defendant knows to whom they will be sold and where they will be shipped.

## XIX

The defendant has employed Leo Benz, Edmund Etter, George Lewis, James Firsich, and Martin Nobbe for workweeks longer than 40 hours since March 1, 1947, without compensating these employees for their employment in excess of 40 hours, in workweeks during such period, at rates not less than one and one-half times the regular rates at which they were employed. Leo Benz has been employed continuously since prior to March 1, 1947, and has worked an average of 54 hours a week. Edmund Etter has been employed continuously since March 1, 1947, and has worked an average of 70 hours a week. George Lewis has been employed continuously since prior to March 1, 1947, and has worked an average of 66 hours a week. James Firsich has been employed continuously since December 1947 on a part time basis, and has worked approximately 70 hours in some workweeks. Martin Nobbe has been employed continuously since prior to March 1, 1947, and has worked an average of 78 hours a week. All of these employees were, and are being, paid on a straight hourly rate basis for all hours worked.

## XX

The relationship between the sales of edible meats, tallow, hides, and by-products is shown by dollars and percentages for the years 1947, 1948, and the first 7 months of 1949 in the tabulation attached hereto marked "Exhibit A" incorporated herein and made a part hereof.

EXHIBIT A'

| | Total Sales Of Packing Plant Operations | Edible Meat Sales | | Hide Sales | | Tallow Sales | | By-Product Sales | | Profit | Loss |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | Amount | Percent of Total Sales | Amount | Percent of Total Sales | Amount | Percent of Total Sales | Amount | Percent of Total Sales | | |
| 1947 | $166,038.61 | $154,211.35 | 92.88% | $6,244.70 | 3.76% | $4,822.81 | 2.90% | $759.75 | .46% | $198.88 | |
| 1948 | 173,966.65 | 163,840.64 | 94.18% | 4,985.29 | 2.87% | 3,253.65 | 1.87% | 1887.07 | 1.08% | | $449.84 |
| 1949 (Thru July) | 90,158.76 | 84,065.99 | 93.24% | 2,873.16 | 3.19% | 2,323.24 | 2.58% | 896.37 | .99% | | |
| For entire period | 430,164.02 | 402,117.98 | 93.48% | 14,103.15 | 3.28% | 10,399.61 | 2.42% | 3543.19 | .82% | | |

## XXI

The parties hereto agree that this cause may be submitted to the Court upon the stipulation of facts and without the presentation of further evidence.

In addition to the above and foregoing Stipulation of Facts, the Court further finds the facts to be:

### Finding A

That the Court has jurisdiction of the parties and the subject matter of this cause pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

### Finding B

That the defendant's employees in the packing plant are engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act; that these employees are covered by the Act during each workweek in which they are engaged in handling, slaughtering, and dressing cattle, or in any other manner processing or working on tallow, hides, and by-products; that the activities covered by the Act include the maintenance operations performed by the employees, which operations are an essential part of, and have a close and immediate tie with, the production of said goods; that where the same processing activities produce both intra-state and interstate goods and cannot be segregated, the total time spent by the employees in such activities constitutes work covered by the Act; that all the activities engaged in by these employees, which activities are covered by the Act, are a regular and recurring part of their duties.

### · Conclusions of Law

Upon the above and foregoing Special Findings of Fact, the Court now states its Conclusions of Law, as follows:

### I

That the law is with the plaintiff on its complaint; that the defendant has violated Sections 7, 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act of 1938.

### II

That the plaintiff is entitled to a judgment permanently enjoining and restraining the defendant, its officers, agents, servants, employees, and attorneys, and all persons acting or claiming to act in its behalf and interest, from violating the provisions of Sections 7, 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act of 1938.

### III

That the plaintiff shall recover of and from the defendant herein its costs in the sum of $———.