**Judy Dianne RODGERS, Plaintiff,**

v.

**WRIGHT'S PROVISIONS, INC., Defendant.**

**Civ. A. No. 68–61.**

United States District Court, D. South Carolina, Anderson Division.

Jan. 22, 1969.

M. A. McAlister, Anderson, S. C., for plaintiff.

H. Grady Kirven, Watkins, Vandiver, Kirven, Long & Gable, Anderson, S. C., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

DONALD RUSSELL, District Judge.

This is an action to recover overtime compensation under the Fair Labor Standards Act, 29 U.S.C.A. Sec. 201 et seq. The defendant-employer operates a small meat packing plant in Anderson, South Carolina.[1] The plaintiff was, at the time set forth in the complaint, employed in the packing cooler department of such plant. The period for which overtime wages are sought preceded the ef-

---

1. Generally, the method of operating such a plant and the steps involved in the processing are outlined in Walling v. Peoples Packing Co. (C.C.A.10 Cir. 1942) 132 F.2d 236, 238, cert. denied 318 U.S. 774, 63 S.Ct. 831, 87 L.Ed. 1144; Fleming v. Swift & Co. (D.C.Ill.1941) 41 F. Supp. 825, 828, aff. Walling v. Swift & Co. (C.C.A.7 Cir.) 131 F.2d 249; and Sykes v. Lochmann (1943) 156 Kan. 223, 132 P.2d 620, 622–623.

fective date of the amendment of 1966, reducing the value definition of "enterprise" under the Act, Section 203(r), 29 U.S.C.A.; and, under the statutory definition applicable at the time, the defendant did not fit the definition of "enterprise".

All the facts have been stipulated by the parties and such stipulation is made the Findings of Fact herein. Upon such Stipulation of Facts the cause was heard by me without a jury. The issue posed for resolution is whether plaintiff's employment during the period in question was within the coverage of the Act.

■ It is well settled that the application of the Fair Labor Standards Act to an employee is governed by the nature of the individual employee's duties and not by the character of the employer's business. Thus, in the oft-cited case of Kirschbaum v. Walling (1942) 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638, the Court emphasized that the Act "makes its application dependent upon the character of the employees' activities." The focus of the Act is, as Mr. Chief Justice Warren puts it, "on the activities of the employees and not on the business of the employer." Mitchell v. Lublin, McGaughy & Asso. (1959) 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243. Accordingly, the burden rests on any employee seeking relief under the Act "to prove that in the course of performing their (his) services for petitioner (his employer) and without regard to the nature of its (the employer's) business, they (he) were (was), as its employees, engaged in the production of goods, within the meaning of the Act, and that such production was for interstate commerce." Warren-Bradshaw Drilling Co. v. Hall (1942) 317 U.S. 88, 90, 63 S.Ct. 125, 126, 87 L.Ed. 83. To recover, the employee must establish that he was actually engag-

ed in the movement of (interstate) commerce, in its production, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof. Wirtz v. Modern Trashmoval, Inc. (C.C.A. 4 Cir. 1963) 323 F.2d 451, 456–457, cert. denied 377 U.S. 925, 84 S.Ct. 1222, 12 L.Ed.2d 216; Wirtz v. R. E. Lee Electric Company (C.C.A. 4 Cir. 1964) 339 F.2d 686, 689; and New Mexico Public Service Co. v. Engel (C.C.A. 10 Cir. 1944) 145 F.2d 636, 638. It is not sufficient that his activities merely "affect commerce". Mitchell v. Lublin, McGaughy & Asso., *supra*, 358 U.S. at p. 211, 79 S.Ct. 260. The Court in every case must, therefore, give "independent consideration" to the employee's particular duties and, using "practical considerations" rather than technical considerations to determine whether those individual duties and activities are concerned with commerce as defined in the Act.[2]

■ The application of these rules of construction to employees of a meat packing plant such as that of the defendant has been often considered in decisions under the Act. It seems clear from such decisions that where the operations are departmentalized and the activities of the employees segregated, those employees in departments engaged in the production of goods intended for interstate commerce are alone within the coverage of the Act. Thus, in Walling v. Peoples Packing Co. (C.C.A. 10 Cir. 1942) 132 F.2d 236, cert. denied 318 U.S. 774, 63 S.Ct. 831, 87 L.Ed. 1144, the plant was departmentalized. Of the plant's 45 employees, 4 to 7 were involved in the slaughtering of livestock and in removing the hides and the inedible portions of the carcasses. After the hides and inedible portions had been removed, the remaining meat went to the "cooling

---

2. Thus, in Baggett v. Henry Fischer Packing Co. (D.C.Ky.1941) 37 F.Supp. 670, 672, the plaintiff-employee alleged specifically that the employer was engaged in interstate commerce but did not, by his allegations, identify his own activities with such commerce. The complaint was held to be subject to a motion to dismiss because it is not the character of the employer's business but the actual duties of the employee and their essential relation to interstate commerce as defined in the Act that confers coverage.

room," where it was processed and packaged strictly for intrastate distribution. The hides and inedible portions, on the other hand, went into interstate commerce. The 4 to 7 employees engaged in the slaughtering and in the removal of the hides and inedible matter (both of which were intended for interstate commerce) were held covered under the Act. The other employees engaged in the operation of the "cooling room" and its activities were not covered, the Court observing, "The Act, of course, does not apply to the employees of the Peoples Company not engaged in production for commerce." (Note 9, p. 240 of 132 F.2d)

The necessary implications of Wirtz v. G & W Packing Company (C.C.A. 4 Cir. 1963) 324 F.2d 802 are to the same effect. In a meat packing plant operated similarly to that involved in the *Peoples Packing Case*, the Administrator took the position that all employees were within the Act. The District Court held none of the employees were covered (210 F.Supp. 726). On appeal the Administrator restricted his claim of coverage to the employees whose activities embraced the slaughtering and removal of hides and offal preliminary to the delivery of "the carcasses [to] the cooling room[s]", thereby conceding that the other employees were without the Act. With the issue thus limited, the Circuit Court of Appeals modified the holding of the District Court to sustain the application of the Act merely to the two employees engaged in slaughtering and the removal of hides and offal, thus permitting the decision of the District Court that all other employees were not covered to stand.

Brooks Packing Co. v. Henry (1943) 192 Okl. 533, 137 P.2d 918, and its two companion cases involving the same employer, Brooks Packing Co. v. Mathis (1943) 192 Okl. 537, 538, 137 P.2d 922 and Brooks Packing Co. v. Willis (1943) 192 Okl. 538, 137 P.2d 923, make clear the distinctions to be followed in determining who among the employees of a small meat packing plant, such as that with which we are here concerned, are covered by the Act. The plant in the

*Brooks Packing Case* processed its hides and inedibles for movement in interstate commerce but, after the removal of such inedibles, the remaining processing of product was wholly for intrastate commerce. In the *Henry Case*, the employee involved was a nightwatchman. His duties did embrace in part acting as watchman over that portion of the plant engaged in the processing of inedibles. In the *Mathis Case*, the activities of the employee included the processing of the inedible matter which was expected to and did move in interstate commerce. On the other hand, in the *Willis Case*, the employee worked in the shipping department and it was stipulated that "the particular department in which he was employed handled none of the inedible products that were shipped to customers outside of the State of Oklahoma" and was concerned only with intrastate processing. Page 925 of 137 P.2d. The employees involved in the *Henry* and *Mathis Cases* were held within the Act; the employee concerned in the *Willis Case* was not. From the varying decisions in these three cases, it is clear that where the operation of the plant is departmentalized and the duties of the employees segregated, only those employees working in the departments concerned with production of goods intended for or expected to move in interstate commerce are covered by the Act; all others are without.

█ It seems fair to say that all the cases in which coverage of any employees of a meat packing plant such as that of the defendant here has been upheld involved only employees engaged in work connected with slaughtering or the removal of hides and inedible matter, all of which was intended for interstate commerce, and have not dealt with the rights under the Act of employees working in a department concerned exclusively with production for intrastate distribution. Thus, in Goldberg v. Everbest Meat Products, Inc. (D.C.Fla.1961) 199 F.Supp. 533, the employee held to have been within the Act was engaged in trimming the fat, bone and offal, all of which, when processed, moved in inter-

state commerce. Again, in Tilbury v. Rogers (D.C.La.1954) 123 F.Supp. 109, 113, aff. Tilbury v. Mitchell (C.C.A. 5 Cir.) 220 F.2d 757, cert. denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748, the employees found to be covered by the Act were butchers and boners "involved in the production of bones and other inedibles" intended for interstate commerce. The same situation prevailed in Selan v. Becker (D.C.Wis.1947) 71 F.Supp. 689. In Sykes v. Lochmann (1943) 156 Kan. 223, 132 P.2d 620, cert. denied 319 U.S. 753, 63 S.Ct. 1165, 87 L.Ed. 1707, there was no departmentalization in the employer's meat plant or "segregation of activities among the employees of the said defendant" (Page 623 of 132 P.2d); and all the employees participated in the slaughtering of the livestock and in the removal of hides and inedible products, intended for interstate commerce. It is established that where an employee is engaged partly in interstate, and partly in intrastate activity, he is covered by the Act as to all his activities. Crook v. Bryant (C.C.A. 4 Cir. 1959) 265 F. 2d 541, 544; Wirtz v. Cannarella (D.C. S.C.1964) 233 F.Supp. 572, 574. Similarly, McComb v. Benz Co. (D.C.Ind. 1949) 92 F.Supp. 742, and Crompton v. Baker (1941) 220 N.C. 52, 16 S.E. 2d 471, involved plants where there was no departmentalization and the employees were engaged in the processing of products for both interstate and intrastate commerce. That it was their connection with the slaughtering and processing of inedible matter intended for interstate commerce that extended coverage to these employees, is clearly marked out by the conclusion expressed by the Court in the McComb Case "that these employees are covered by the Act during each workweek in which they are *engaged in handling, slaughtering, and dressing cattle, or in any other manner processing or working on tallow, hides, and by-products.*" (Italics added). Page 747 of 92 F.Supp.[3] The products processed by the employees

involved in Fleming v. Swift & Co. (D.C. Ill.1941) 41 F.Supp. 825, aff. Walling v. Swift & Co. (C.C.A. 7 Cir.) 131 F.2d 249, it was found, were intended for and did move in interstate commerce. (See Finding 3, p. 828). The necessary implication of all these cases, though, is that employees in a plant where their duties are limited to the production of goods intended for intrastate distribution are not under the Act.

■ The plant involved in this proceeding, by agreement of the parties, is departmentalized. The defendant concedes that all its employees involved in the operation of the plant up to delivery of the finished carcasses to the "cooling room" are covered. Thus, it admits coverage for those employees engaged in the slaughtering and in the removal of bones and other inedible matter. It denies liability to the plaintiff, however, since it is stipulated that the plaintiff was employed exclusively in the activities of the "cooling room" where goods were processed solely for intrastate distribution (except for the few sales hereafter discussed). Concededly, her activities were the same as those which the Administrator, by his failure to appeal, admitted were without the scope of the Act in the G & W Packing Company Case, supra, (324 F.2d 802) and which in the Willis Case, supra, (137 P.2d 923) were held expressly without the scope of the Act. It would appear from the Stipulation of Facts that the representative of the Administrator initially recognized that the employees of the defendant such as the plaintiff were not covered. I am of the opinion that the earlier ruling of the Administrator was in keeping with the proper application of the Act and that the plaintiff was not, at the times involved in this proceeding, covered by the Act.

Plaintiff relies on Horton v. Wilson & Co. (1943) 223 N.C. 71, 25 S.E.2d 437. The plaintiff in that case was employed at a branch of a large, nationally operated

---

3. See, however, Hill v. Jones (D.C.Ky. 1945) 59 F.Supp. 569, but disapproved in Nunn's Battery and Electric Company v. Wirtz (C.C.A. 5 Cir. 1964) 335 F.2d 599, 601, note 3.

meat packing house. After stating that if an employee's "activities were confined solely to assistance in intrastate distribution" he would not be under the Act, the Court found that the North Carolina branch was, "in effect, an agency of the defendant, integrated with the Chicago office as an interstate set-up, and acting under the control and management of the home office as an efficacious if not necessary instrumentality in keeping its products flowing in interstate commerce from the various shipping points outside the State to its own warehouses in this State."[4] This is not such a case. We are not concerned with a large nationally integrated processor, whose primary business is interstate distribution.

The plaintiff argues, however, that some sales in interstate commerce were made of the products processed in the "cooling room" where plaintiff was employed. These sales were made at defendant's plant. No deliveries were made across State lines. It may be argued, however, that the defendant knew that the purchaser intended to transport the goods acquired into Georgia and that such fact is sufficient to invest these sales with an interstate character.[5] Irrespective of whether such sales be viewed in interstate commerce, they are too inconsequential and occasional in my opinion to support a recovery by the plaintiff under the Act. These sales aggregated $31.50 in amount out of an annual dollar sales volume of approximately $750,000. They represented five isolated transactions over a period of almost a year. While the rule of de minimis has been generally held inapplicable to actions under the Fair Labor Standards Act where the services performed or sales made "are regular and continuous" and not insubstantial, and coverage does not depend on the volume of business, (Wirtz v. Durham Sandwich Company (C.C.A. 4 Cir. 1966) 367 F.2d 810, 812; Wirtz v. Modern Trashmoval, supra, at pp. 457–458 of 323 F.2d; Wirtz v. G & W Packing Company, supra, at p. 803 of 324 F. 2d) it was not intended that "sporadic or occasional shipments of insubstantial amounts of goods" should poduce coverage under the Act. (See, Mabee v. White Plains Pub. Co. (1946) 327 U.S. 178, 181, 66 S.Ct. 511, 513, 90 L.Ed. 607; Mitchell v. Independent Ice & Cold Storage Company (C.C.A. 5 Cir. 1961) 294 F.2d 186, cert. denied Independent Ice & Cold Storage Co. v. Goldberg, 368 U.S. 952, 82 S.Ct. 394, 7 L.Ed.2d 386.) Certainly, the few sales in interstate commerce made of products processed in the department where plaintiff was employed, were "sporadic" and "occasional" and were "insubstantial" in every way. They were quite unlike the sales regularly made, in substantial quantities in Wirtz v. G & W Packing Company, supra, (324 F.2d 802, 803) and Wirtz v. Crystal Lake Crushed Stone Company (C.C.A. 7 Cir. 1964) 327 F.2d 455, 458. They are not sufficient to render plaintiff's activities within the fair intendment of the Act. Remmers v. Egor (C.C.A. 2 Cir. 1964) 332 F.2d 103, 104. Plaintiff's involvement in interstate commerce, based as it is on these five isolated and insubstantial transactions, spread over many months and involving an infinitesimal part of defendant's operations and even less of plaintiff's duties, is insufficient to support this action.

Let judgment be entered in favor of the defendant.

And it is so ordered.

---

4. See, Cudahy Packing Co. of Alabama v. Bazanos (1943) 245 Ala. 73, 15 So.2d 720; but cf. Swift & Co. v. Wilkerson (C.C.A.5 Cir. 1941) 124 F.2d 176, Fellabaum v. Swift & Co. (D.C.Ohio 1944) 54 F.Supp. 353, and Abadie v. Cudahy Packing Co. (D.C.La.1941) 37 F.Supp. 164.

5. Bracey v. Luray (C.C.A.4 Cir. 1943) 138 F.2d 8, 11.